Steavean Bruce WRIGHT, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–582.

Court of Criminal Appeals of Oklahoma.

Jan. 25, 1977.

Glenn W. Rawdon, Norman, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Michael Darrah, Legal Intern, for appellee.

## OPINION

BLISS, Judge:

The appellant, Steavean Bruce Wright, hereinafter referred to as defendant, was charged in the District Court of Cleveland County, Case No. CRF–75–438 with the crime of Robbery With a Dangerous Weapon While Acting in Concert With Another. After the preliminary hearing the defendant was bound over on a charge of Robbery By Force While Acting in Concert With Another and was subsequently jointly tried before a jury with a co-defendant, Billy Glenn Watson, and convicted. Punishment was assessed at a term of five (5) years under the direction and control of the Department of Corrections of the State of Oklahoma. From a judgment and sentence in accordance with the verdict the defendant has perfected his timely appeal.

Briefly stated the evidence adduced at trial is as follows: Jamshied Safatian, an Iranian student at the University of Oklahoma, testified that at approximately 1:25 a. m. on the morning of August 14, 1975, he was walking across campus towards his apartment when he was stopped by the defendant Wright, Watson and another individual who asked for cigarettes. After a brief conversation the three left and the witness continued on across campus. Shortly thereafter the three again approached the witness and asked him where they could sleep since they were lost in the city. At that point co-defendant Watson asked Safatian if he had a knife. After receiving a negative reply the defendant gave an opened pocket knife to Watson who informed the witness that "this is a hold up". Safatian told Watson that he was a stranger and did not understand and Watson sat down on the curb and, digging the knife in the asphalt, attempted to explain. Evidently failing, the four men continued to walk across the campus. Shortly thereafter defendant Wright punched the witness twice in the face and Watson kicked him in the back. The defendant then searched Safatian's pockets, took his key chain and $2.00 and then proceeded to smash his glasses. After a final punch and kick the attackers ran off. The witness then made his way to Walker Hall where he reported the robbery and the police were called. He further testified that Officer Holland of the Oklahoma University Police Department took him to the hospital where he was treated for a broken nose. At that time he gave Holland a description of the defendants. After treatment he was returned to his apartment where at approximately 3:35 a. m. he received a phone call from police who asked him to come to Sambo's restaurant. Upon his arrival Officer Holland asked him if he could recognize anyone and the witness identified both Wright and Watson. During trial the witness identified a pocket knife with tar on it as being the one held by the defendant but the trial court subsequently refused to admit it into evidence.

Officer Walter Mauldin then testified that he was advised by radio of the robbery and received a rough physical description of three individuals reportedly involved. He then proceeded to the scene of the attack to investigate. At approximately 2:37 a. m. he noticed a vehicle containing three individuals who met the rough physical description drive slowly by the scene. The individuals were stopped but it was determined that they were not involved. Approximately 30 minutes later the three returned and as a result of a conversation with them Mauldin directed Officer Holland to Sambo's restaurant.

Humberto Vidaillet then testified that he was a student at the University and that he was in the Walker Tower recreation lounge on campus between 1:00 and 2:00 a. m. on the 14th with Gonzala Robles when an individual came in who appeared to be badly beaten. After overhearing a description of

the incident they decided to go to Sambo's restaurant and out of curiosity first drove around the campus where they were stopped by authorities and questioned. They then went to Sambo's where they saw three individuals who matched the description they heard earlier that night. They then returned to campus and reported what they had seen to police officers.

Officer Mark Holland then testified that on August 14, 1975, he responded to a call concerning a robbery and a beating victim at Walker Tower. While taking the victim to the hospital he was given a description of the attackers. After he went back on patrol he received a call from the dispatcher to proceed to Sambo's. When he arrived a Norman police officer was speaking with three suspects in the parking lot. Holland questioned the suspects and obtained identification but did not place them under arrest. He then contacted the dispatcher to arrange for the victim to come to Sambo's. Safatian arrived shortly and Holland told him that they had some suspects who might be involved. After walking closer to the suspects Safatian identified Wright and Watson. Holland explained that Safatian had trouble identifying them from a distance because he had lost his glasses.

Holland then identified a pocket knife which he had removed from the defendant's pocket and noted that there was a black substance on the blade. Holland further testified that the suspects were then taken to the police department. The trial court would not admit the pocket knife into evidence.

Officer Michael Feurborn then testified that on August 14, 1975, he obtained a search warrant to search two vehicles which were then located in the locked University of Oklahoma Police Department compound and that the vehicles had been impounded from Sambo's restaurant. He further testified that during the search he found the keys identified by the victim in the glove compartment of the defendant's vehicle. The officer further stated that the car windows were open and the car and glove compartment unlocked at the time of the search, but that the car was within a padlocked compound surrounded by a 10 foot fence which was not open to the public. The keys were then admitted into evidence and the state rested.

The defense first called Ortega Robles who testified that he was with Humberto Videillet and Gary Kohler at Sambo's on the night in question and that defendant Wright and Watson were there but he was not sure which cars they came in. Gary Kohler then testified that he was also with Videillet at Sambo's but could not positively identify Wright and Watson as the individuals seen at Sambo's.

The defendant's wife Lois Wright then testified that on the evening in question her husband came home and asked if she wanted to go to Sambo's to drink a cup of coffee. Initially she refused and her husband left. Thereafter she changed her mind and at 1:30 a. m. took her little girl next door to the neighbors and proceeded to Sambo's to meet her husband.

Co-defendant Billy Watson then testified that on the evening in question between 12:00 and 1:30 a. m. he was at a place called Fontanelli's and that the defendant Wright came in just as he was leaving. He further testified that he saw Wright shortly thereafter and they went to Sambo's where they were subsequently arrested. He denied being on the Oklahoma University campus that night and stated that the first time he ever saw Safatian was at Sambo's prior to his arrest.

Defendant Wright then took the stand to testify on his own behalf stating that at approximately 10:45 p. m. he left home to go to Sambo's. After staying there for a while he drove out to the campus business area around 1:00 or 1:30 a. m. where he saw his mother, sister and co-defendant Watson coming out of a bar and they all agreed to go to Sambo's. When he arrived he did not see Watson's car or his mother's pickup so he went home and asked his wife to go get some coffee and she refused. He then left and saw Watson at a convenience store where they talked for awhile and then proceeded to Sambo's and their subsequent ar-

rest. He further denied being on the O.U. campus that night and stated that he had never seen Safatian before they confronted each other at Sambo's.

The defendant's first assignment of error urges that the trial court erred in failing to grant a requested continuance for the reason that the transcript of the preliminary hearing was not delivered to defense counsel until 16 hours before trial. In support of his contention the defendant argues that his attorney was court appointed and that the failure of the court reporter to deliver the transcript until the night before trial prejudiced the defendant in that defense counsel had insufficient time to familiarize himself with the transcript for purposes of arguing his motions to suppress and impeaching state's witnesses.

From our examination of the record as a whole it is our opinion that the defendant was not prejudiced by the late delivery of the transcript. The trial court in initially overruling the motion for continuance did same without prejudice to a renewal of the motion during the course of the trial should cause arise. During the trial defense counsel effectively used the transcript to impeach a state's witness and evidentiary hearings in support of motions to suppress were held without further motions for continuance. In *Bryant v. State,* Okl.Cr., 471 P.2d 948, we held that a defendant was not prejudiced when he received only a tape recording of the testimony of the preliminary hearing 36 hours prior to trial. In the instant case there is no evidence that the defendant was in any way prejudiced by the late delivery of the transcript and it is our opinion that the trial court did not abuse its discretion in denying the continuance.

The defendant's second assignment of error contends that the trial court erred in not granting a mistrial when the trial judge erroneously read the original information charging robbery with a dangerous weapon to the jury, said information not being one upon which the defendant was tried. However, the record does not contain the portion of the trial proceeding wherein any information was read to the jury and we are unable to determine what, if any, prejudice resulted. As stated in *McGaha v. State,* Okl.Cr., 492 P.2d 1101, it is the responsibility of the defendant to present on appeal enough of the record to allow review of the alleged error. In the instant case the record is silent and the defendant's second assignment cannot be considered on appeal.

The defendant's next assignment of error urges that reversible error was committed by the prosecuting attorney keeping an open pocket knife in plain view of the jury during the trial when said knife was not admitted into evidence. However, the defendant fails to cite any authority in support of his position. This Court has held on many occasions that it is necessary for defense counsel not only to assert error but also to support his contentions by both argument and citations of authority, and if that is not done, and it is apparent that the defendant has been deprived of no fundamental right, this Court will not search for authority to support such assertions of error. *Jones v. State,* Okl.Cr., 527 P.2d 169. We observe no violation of a fundamental right of the defendant in the purported error. The record reflects that defense counsel failed to object to the presence of the knife and the prosecution made a good faith attempt to have the knife admitted into evidence as proof tending to connect the defendant with the commission of the crime. Therefore, since the defendant fails to cite authority to support his position and since he failed to bring the knife to the attention of the trial court by proper objection, it is our opinion that the defendant's third assignment is without merit.

The defendant's last assignment of error contends that the trial court erred in not suppressing the introduction into evidence of the victim's key chain for the reasons that the evidence presented was a result of an unlawful search and seizure and that the state did not establish a chain of custody sufficient to justify admissibility.

In the instant case it appears that the arresting officers impounded the de-

fendant's vehicle and subsequently obtained a search warrant. The vehicle was searched pursuant thereto. However, the defendant does not attack the validity of said warrant. Therefore, the only question properly before us is whether there is adequate proof of the chain of custody of said vehicle to reasonably negate the possibility of tampering between the time of the arrest and the time of the subsequent search. However, in the instant case we deem it unnecessary to determine that issue since the evidence of the defendant's guilt, independent of the introduction of the key chain, is clear. The defendant received the minimum sentence under the law and the error, if any, must be considered harmless. The defendant's last assignment is without merit.

From a thorough examination of the record before us it is our opinion that the defendant received a fair and impartial trial before a jury, no fundamental right of the defendant was prejudiced and the judgment and sentence appealed from should be, and the same is hereby *AFFIRMED*.

BRETT, P. J., and BUSSEY, J., concur.