Velma RIGGLE and Terry Cotten, Appellants,

v.

The STATE of Oklahoma, Appellee.

Nos. F–77–422 and F–77–423.

Court of Criminal Appeals of Oklahoma.

Oct. 31, 1978.

Rehearing Denied Dec. 7, 1978.

Gary E. Payne, Atoka, for appellant Riggle.

James T. Branam, Branam & Dennis, Coalgate, for appellant Cotten.

Larry Derryberry, Atty. Gen., Ross N. Lillard, III, Asst. Atty. Gen., for appellee.

## OPINION

CORNISH, Judge:

The appellants, Velma Riggle and Terry Cotten, hereinafter referred to as defendants, where charged with Murder in the First Degree, in the District Court, Atoka County, Case No. CRF–7622. The information was subsequently amended to reflect a

charge of Murder in the Second Degree, in violation of 21 O.S.Supp.1975, § 701.2. The defendants were jointly tried before a jury, found guilty, and sentenced pursuant to 21 O.S.Supp.1975, § 701.4, to serve from ten (10) years to life imprisonment in the State penitentiary. Defendants have perfected timely appeals which have been consolidated for this Court's consideration.

At approximately 6:00 p. m. on May 29, 1976, Arthur Wayne Yost discovered the body of the decedent, Anna Lou Wilkins, on his property, near a sandy gravel road and called the authorities. "Drag marks" led from the body to what appeared to be a puddle of blood in the middle of the road. Nearby in the bar ditch, were strewn a woman's purse and its contents, including a pocket knife open at about a 45 degree angle. After an investigation at the scene, the Atoka County Sheriff requested the body be sent to the Atoka County Medical Examiner for an autopsy.

Defendants were arrested at approximately 11:00 a. m. on May 30, 1976, in Antlers, Oklahoma. They were taken to the Pushmataha County Sheriff's Office where they were periodically questioned by four law enforcement officers. Defendant Riggle was read the *Miranda* warnings twice during this period. At 4:40 p. m., she signed a consent to search form authorizing the officers to search the apartment she shared with one Betty Beech. Testimony of Ms. Beech reflected that on that same date, she gave the officers verbal consent to search the one bedroom, one bathroom apartment, she and defendant Riggle shared.

During the search of the apartment, officers confiscated certain items of clothing found soaking in the bathtub. Record testimony reflects this clothing was worn by defendants Riggle and Cotten on the night of May 28.

At trial, Dr. Don L. Rippee, who examined the body of the deceased on May 29, described multiple stab wounds, cuts and abrasions sustained by the victim. He testified the death could have resulted either from a stab wound located on the left ante-rior chest wall that penetrated the chest cavity, or from a large laceration over the left orbital region which went through the skull and penetrated the brain substance. He also said that any kind of a sharp instrument, such as a knife, could have caused the stab-type wounds, and that abrasions of the right flank region, a fractured femur, and the head trauma could have been caused by being run over with an automobile.

The events leading to the crime are as hereinafter related. At 6:00 p. m. on May 28, 1976, Betty Beech went to the aforementioned apartment. Shortly thereafter, defendant Cotten and his brother Roger Cotten arrived. They went to a convenience store where they encountered Anna Lou Wilkins, the decedent. She returned with them to the apartment, where they drank beer and smoked marihuana cigarettes. Later, defendant Riggle, who had previously dated defendant Cotten, joined them at the apartment. Around 10:00 p. m., defendant Cotten left with the decedent, and the two went to a tavern in Lane, Oklahoma. Roger Cotten, defendant Riggle, and Betty Beech also left the apartment and arrived at the tavern in Lane at about 10:30 p. m. After defendant Cotten shot some pool, he and defendant Riggle went outside and sat in the car. When Ms. Beech went out to talk to them, they told her they were going to leave. Subsequently, the decedent asked Ms. Beech about defendant Cotten's whereabouts and was informed he was outside in the car with defendant Riggle. Ms. Beech went outside again about 15 minutes later but both defendants and the decedent had apparently left.

Roger Cotten and Betty Beech left the tavern shortly before midnight, ultimately arriving at the Cotten's residence. Both defendants were there when they arrived, and defendant Cotten told Roger that he "killed that bitch," and showed them his bloody jeans to prove it. Ms. Beech testified that while Roger and defendant Cotten were out "getting rid" of the decedent's truck, defendant Riggle related to Ms. Beech what had happened.

Testimony of Ms. Beech indicates that after leaving the bar, defendant Cotten, defendant Riggle and the decedent drove out in the country. There, defendant Cotten stopped the car, urinated, went around to the passenger side of the car, opened the door and told the decedent to get out. The decedent asked if he were going to dump her there. Defendant Cotten stabbed her and a struggle ensued. After defendant Cotten overcame her resistance, he got back into the car and began to drive away. However, he stopped the car and asked defendant Riggle to help him drag the decedent's body off the road. They returned to where the victim had been left, and defendant Cotten directed defendant Riggle to run over the body. She followed his instructions, first driving over the body and then backing over it. Defendant Riggle then helped defendant Cotten drag the body off the road.

When both defendants returned, they discussed splitting the $26.00 defendant Cotten had taken from the deceased. Defendant Riggle and Ms. Beech then accompanied defendant Cotten to a restaurant. After eating, they bought more beer and returned to the house, where the girls proceeded to sleep with their respective escorts. The next morning they returned to the apartment of Ms. Beech and defendant Riggle, where defendant Riggle placed the bloody clothes in the bathtub to soak.

Janice Davis, forensic chemist for the Oklahoma State Bureau of Investigation, conducted several scientific tests for the prosecution in this case. She testified that she conducted both a benzidine and phenolphthalein test on the pocket knife found at the scene. These examinations were presumptive tests for blood and were negative with respect to the knife. She also ran such tests on the items which were confiscated during the search of defendant Riggle's apartment. These revealed the presence of blood on the jeans worn by defendant Cotten on May 28, on a rag and on a rug found in the bathroom. On these items other tests, involving the use of an antiserum specific for human blood, were conducted and the results were positive.

Ms. Davis also conducted tests with a new device that utilizes x-ray florescence to analyze trace amounts of inorganic substances. That instrument was used to analyze three soil samples which had been taken from the crime scene, two samples taken from defendant Cotten's boots, and two samples from a pair of ladies' boots found at the scene. The results revealed that the soil samples taken from one of defendant Cotten's boots and from the scene had a common origin. Ms. Davis explained that in order for two samples to have a common origin, one sample must have been lying immediately next to, or on top of, the other sample.

The State rested when testimony adducing the above set forth facts was completed.

Thereafter, the defense called Ms. Joy Graves, who had been arrested for driving while intoxicated and placed in a jail cell with defendant Riggle. Ms. Graves related that Ms. Beech had visited defendant Riggle while she was incarcerated and that on this occasion she apologized for "telling those lies."

The State then called Ms. Beech as a rebuttal witness. Ms. Beech testified that on the occasion in question she had told defendant Riggle that she had gotten some of the details of the incident wrong in her initial statement and that things might have been different had she not given a statement. However, she also stated that she had at no time deliberately falsified her statement and that she had, at trial, truthfully testified to the best of her recollection.

As their first assignment of error, defendants claim that the black and white photographs admitted into evidence at trial served only to inflame the passions of the jury and should have been excluded. In *Oxendine v. State,* Okl.Cr., 335 P.2d 940 (1958), this Court adopted the test first formulated by the California Supreme Court in the case of *People v. Carter,* 48 Cal.2d 737, 312 P.2d 665 (1957), wherein the Court stated:

" 'If the principal effect of demonstrative evidence such as photographs is to arouse

the passion of the jury and inflame them against the defendant because of the horror of the crime, the evidence must of course, be excluded. * * * On the other hand, if the evidence has probative value with respect to a fact in issue that outweighs the danger of prejudice to the defendant, the evidence is admissible even if it is gruesome and may incidently arouse the passions of the jury.' "

In the instant case, the probative value of the photographs outweighed any passion that may have been incidentally aroused in the jury. These pictures were not introduced in a quantity greater than that required to accurately depict the relative position of the body when found and the various traumas inflicted upon it. They additionally served to corroborate the testimony of several of the prosecution's witnesses, whose testimony would have otherwise been less credible.

■ In cases where the photographs in question depict a scene which is gruesome in nature, the trial court must consider whether the probative value of that particular reproduction outweighs the prejudicial consequences that potentially accompany its admission. This Court will not interfere with such a determination unless it appears that the trial court's discretion was abused. *Glenn v. State,* Okl.Cr., 333 P.2d 597 (1958), and *Williams v. State,* Okl.Cr., 542 P.2d 554 (1975). We find no abuse of discretion and conclude the defendants' first assignment of error to be without merit.

■ Defendants' second assignment of error asserts that certain items of clothing were improperly admitted into evidence because they were the product of an unconstitutional search and seizure. The record reveals no search warrant was obtained prior to the search.

In *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), the United States Supreme Court held that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment, subject only to a few specifically established and well-defined exceptions. Since the search in the instant case was conducted without a warrant, the burden is upon the State to establish the reasonableness of the search, by showing it falls within one of the exceptions to the warrant requirement. *Case v. State,* Okl.Cr., 519 P.2d 523 (1974).

This Court is of the opinion that the State has satisfactorily carried that burden by offering clear and convincing proof that verbal consent to search was freely and voluntarily given by defendant Riggle's roommate, Betty Beech. This conclusion is not shaken by the defendants' first proposition contending that the consent of a co-tenant is insufficient to bring a warrantless search within the bounds of law. In *United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), the Supreme Court held that:

"[W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected. . . ." (Citations omitted, footnotes omitted)

The Court further explained the term "common authority" in footnote No. 7 to the above quoted passage, which states:

"[That authority] rests . . . on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched."

This Court expressly adopted the above language in *Burkham v. State,* Okl.Cr., 538 P.2d 1121 (1975), and has even more recently applied the same principle in *Rutledge v. State,* Okl.Cr., 545 P.2d 1257 (1976). The record reveals defendant Riggle and Ms. Beech had joint access and control of the

apartment. The articles seized were found in the commonly used bathroom. It therefore follows that Ms. Beech could authorize a legal search of the premises under the rules set forth in *United States v. Matlock, supra.*

■ In light of these findings, we find no merit to the other propositions brought on behalf of the defendants, which only serve to attack different aspects of the purported waiver executed by defendant Riggle. It was entirely unnecessary for the State to show that it obtained defendant Riggle's consent to search, because the legality of the search was put beyond question once consent was secured from Betty Beech. The Xeroxed· copy of the "consent to search" form constituted merely cumulative evidence. *Schneider v. State,* Okl.Cr., 538 P.2d 1088 (1975), held that the admission of evidence which is merely cumulative is not reversible error, even though the evidence would otherwise be inadmissible. Here, the copy of the "consent to search" form was inadmissible because it violated the best evidence rule. The original document, which was never accounted for, would have been the best evidence. Therefore, although admission of the copy was clearly error, such error was harmless since the evidence was merely cumulative.

Defendants' third assignment of error contends the trial court abused its discretion in allowing the State's medical witness, Dr. Don L. Rippee, to testify as an "expert." Dr. Rippee graduated from a college of osteopathic medicine only five days prior to the time he conducted an examination upon the decedent's body at 8:00 a. m. on May 29th, while he was working at the Atoka Memorial Hospital under the supervision of Dr. David Simpson, the County Medical Examiner. Although unlicensed by the State, he was allowed to practice on the provision that Dr. Simpson supervise and sign all reports completed by him.

Upon examining decedent's body, Dr. Rippee made two sets of notes as to his findings. One set was signed by Dr. Simpson and sent with the body; the other set was kept by Dr. Rippee for his personal reference, and was introduced into evidence.

In considering whether Dr. Rippee's testimony was admissible, we note the fourth paragraph of the Syllabus to *Brown v. State,* 9 Okl.Cr. 382, 132 P. 359 (1913), which states:

"A witness may be qualified to testify as an expert by studying without practice or by practice without studying; and where a witness has qualified as an expert, based upon studying alone, it is error to reject the testimony of such witness upon the ground that such testimony was not based upon actual experience."

■ It is undisputed Dr. Rippee had accumulated no experience as a practicing physician and was unlicensed. However, such facts do not necessarily prevent him from testifying as an expert. The thirteenth paragraph of the Court's Syllabus in *Harvell v. State,* Okl.Cr., 395 P.2d 331 (1964), provides:

"A witness need not be a practicing physician, or a member of a profession to which opinion evidence of such character is necessarily confined, in order to give such testimony as an expert. Consequently, a witness other than a practicing physician, who is not qualified as such to testify as to cause of death, may, by training, study and experience, or familiarity with the subject, be deemed sufficiently qualified to give such testimony as an expert. The sufficiency of his qualifications is a question largely addressed to the sound discretion of the trial court."

■ The decision of the trial court will not be disturbed on appeal unless it clearly appears that said discretion has been abused. *Box v. State,* Okl.Cr., 541 P.2d 262 (1975); *Barnhart v. State,* Okl.Cr., 559 P.2d 451 (1977). Furthermore, clear proof of error is necessary to warrant reversal by the reviewing court. *Pierce v. State,* Okl. Cr., 371 P.2d 924 (1962). Admittedly, the limited extent of his training in pathology and lack of practical experience goes to his credibility as a witness. *Holt v. State,* 84 Okl.Cr. 283, 181 P.2d 573 (1947). However,

the weight and credibility of the opinion of the expert is a question for determination by the jury. *Bingham v. State,* 82 Okl.Cr. 5, 165 P.2d 646 (1946) and *Pierce v. State,* supra. Here, photographs of the decedent may have served to reinforce Dr. Rippee's credibility. We find he was trained in medicine and possessed the minimal qualifications necessary to be accepted as an expert witness. Therefore, the trial court did not abuse its discretion in allowing his testimony, and defendants' third assignment of error is without merit.

■ In their fourth assignment of error, defendants contend the trial court erred in not granting a motion for continuance and a motion to quash, based upon the fact that transcripts of the preliminary hearing were not delivered into their possession until the day before trial. In *Wright v. State,* Okl. Cr., 559 P.2d 852 (1977), this Court said:

"From our examination of the record as a whole it is our opinion that the defendant was not prejudiced by the late delivery of the transcript. The trial court in initially overruling the motion for continuance did same without prejudice to a renewal of the motion during the course of the trial should cause arise. During the trial defense counsel effectively used the transcript to impeach a state's witness and evidentiary hearings in support of motions to suppress were held without further motions for continuance. . . . In the instant case there is no evidence that the defendant was in any way prejudiced by the late delivery of the transcript and it is our opinion that the trial court did not abuse its discretion in denying the continuance." (Citation omitted)

In *Wright v. State,* supra, the transcript of the preliminary hearing was not delivered to the defense counsel until 16 hours before trial. The facts of that case so resemble those of the case at hand that we find it controlling. There is no indication in the record that these defendants were actually prejudiced. See, *Blackwood v. State,* Okl.Cr., 525 P.2d 1369 (1974), and *Bryant v. State,* Okl.Cr., 471 P.2d 948 (1970). It is also to be noted that this error of law is not specifically mentioned by either defendant in his motion for new trial or corresponding petition in error so as to properly preserve it for appellate consideration. See, *Hurley v. State,* Okl.Cr., 416 P.2d 967 (1966). Therefore, we find the defendants' fourth assignment of error to be without merit.

■ The fifth assignment of error concerns a denial of a motion to sever the trial of these co-defendants filed by defendant Riggle, which she alleges deprived her of a fair trial. Defendant Cotten does not raise the issue of severance on appeal. Defendant Riggle relies on *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), as authority for the apparent proposition that she was denied her fundamental right to confrontation of the witnesses against her and to cross-examination of her co-defendant. However, she fails to direct this Court's attention to any specific testimony which purportedly resulted in a *Bruton* violation. In *Bruton,* the United States Supreme Court held it was reversible error to allow the admission of a co-defendant's extrajudicial confession when it implicates the defendant in a joint trial. Since neither defendant testified at trial and no custodial confessions by either defendant were admitted in evidence, presumably, the testimony which defendant Riggle deems objectionable was that elicited from Betty Beech. Ms. Beech testified that defendant Cotten stated "I killed that bitch," while in the presence of defendant Riggle. While this does indeed constitute an extrajudicial confession on the part of defendant Cotten, we fail to see how this statement served to implicate defendant Riggle. On the contrary, such statement overtly implies that defendant Cotten was solely responsible for the crime, thus tending to exonerate defendant Riggle.

The majority of defendants' statements testified to by Ms. Beech, were made in each others' presence. While the statements of each defendant tend to inculpate the other defendant, they are consistent in substance. Such consistent admissions do not pose the devastating risk contemplated by *Bruton,* supra. See *United States v.*

*Spinks,* 470 F.2d 64 (7th Cir. 1972). The rationale seems to be that while *Bruton* focuses on the potential prejudicial effect of the statement by the nonconfessing defendant, the problem does not arise where each co-defendant is confronted by evidence of his or her own individual admission of guilt. *United States v. Venere,* 416 F.2d 144 (5th Cir. 1969); *Clark v. State,* Okl.Cr., 509 P.2d 1398 (1973).

This Court has previously held that a ruling on a motion for severance is a matter within the sound discretion of the trial court. *Chance v. State,* Okl.Cr., 539 P.2d 412 (1975). We have carefully reviewed the testimony adduced at trial and conclude there was no such abuse of discretion. Therefore, the fifth assignment of error is without merit.

The sixth and final assignment of error contends defendants were deprived of a fair trial by means of surprise in that an expert witness, a forensic chemist, was endorsed late in the trial and testified as to matter which was technical in nature. Her report was given to the defense attorneys immediately before she took the stand to testify on behalf of the State. The record reflects that this witness, who testified concerning soil and blood analysis, was endorsed as a witness November 5, 1976, three days before the jury trial began. Further, in *Stilwell v. State,* Okl.Cr., 559 P.2d 1263 (1977), we stated that it is a well settled rule that endorsement of a witness on an information may be permitted at any time within the trial court's discretion. Thus, a late endorsement in itself would not be error. Next, defendants argue defense counsel were not provided with a copy of the test results, pursuant to their motion to produce, until immediately before the expert witness assumed the stand. It is therefore contended that defense counsel were unable to adequately cross-examine this witness because they lacked sufficient opportunity to inspect and digest the report.

As noted in *Evans v. State,* Okl.Cr., 312 P.2d 908 (1957), this Court has specified a definite procedure to follow where the defense counsel is surprised by the late endorsement of a witness. That procedure was set out in *Paschall v. State,* 96 Okl.Cr. 198, 252 P.2d 175 (1952), in the second paragraph of the Syllabus as follows:

"The trial court in the exercise of judicial discretion may permit the name of a witness to be endorsed upon the information even after the trial has commenced. If defendant's counsel is surprised at such action and such endorsement of an additional witness requires a production of further testimony by defendant, he should withdraw his announcement of ready for trial and should file a motion for a postponement or a continuance in which he should set out the facts constituting such surprise, and the other evidence, if any, he could produce to rebut the testimony of such additional witness if the trial of the case was continued. *Where he fails to do this the error, if any, is waived.*" (Emphasis added)

See also, *Britt v. State,* Okl.Cr., 285 P.2d 441 (1955); *Jones v. State,* Okl.Cr., 410 P.2d 559 (1966); *Williams v. State,* Okl.Cr., 447 P.2d 456 (1968); *Songer v. State,* Okl.Cr., 464 P.2d 763 (1969); *Johnson v. State,* Okl. Cr., 487 P.2d 362 (1971); and *Fitzpatrick v. State,* Okl.Cr., 544 P.2d 525 (1975), which collectively represent an unbroken line of cases, each holding that the defendant's attorney must move for a continuance when surprised by an unexpected endorsement in order to preserve the error on appeal.

In the case at bar, the defendants' counsel merely requested a ten minute recess. A motion for continuance was never made on the grounds of surprise. Even though the witness remained subject to recall, the defense attorneys chose not to elicit any further testimony from her and later agreed she could be excused. Given the continuing availability of the witness and the failure of the defendants to ask for a continuance, the trial court's refusal to allow a ten minute recess was not error. Under these circumstances, we conclude defendants were not deprived of a fair trial, and their sixth assignment of error is without foundation.

For the above and foregoing reasons and in accordance with the authority cited herein, the judgments and sentences appealed from are *AFFIRMED.*

BUSSEY, P. J., and BRETT, J., concur.