OSCN Found Document:STATE v. BURTRUM

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 STATE v. BURTRUM
2023 OK CR 7
530 P.3d 68
Case Number: S-2022-347
Decided: 05/11/2023
THE STATE OF OKLAHOMA, Appellant v. KELLY BURTRUM, Appellee

Cite as: 2023 OK CR 7, 530 P.3d 68

 

 

O P I N I O N

ROWLAND, PRESIDING JUDGE:

¶1 Appellee Kelly Burtrum was charged by Amended Information with First Degree Manslaughter, in violation of 21 O.S.2011, § 711(1), in the District Court of Garfield County, Case No. CF-2020-385. Burtrum was bound over at preliminary hearing held on September 17, 2021, before the Honorable Brian N. Lovell, Special Judge.

¶2 On January 18, 2022, Burtrum filed Defendant's Brief in Support of Plea in Abatement, Motion to Quash, Motion to Set Aside the Information and Motion to Dismiss. At a motion hearing held on April 6, 2022, the Honorable Dennis Hladik, District Judge, with no objection from either party, treated the matter as a motion to suppress. The district judge sustained Burtrum's motion. Appellant, the State of Oklahoma, appeals the district court's order raising the following issues:

(1) whether the district court abused its discretion in finding Burtrum was under arrest when he submitted to the blood draw; and

(2) whether the district court abused its discretion by holding Burtrum did not consent to the blood draw.

¶3 We exercise jurisdiction pursuant to 22 O.S.2011, § 1053(5). Because the result of this case is required by the issue raised in Proposition 2, we need not address that raised in Proposition 1. For the reasons discussed below, we affirm the district court's ruling.

FACTS

¶4 On June 22, 2020, Trooper Robert Cottrill was dispatched to the scene of a four-wheeler accident involving an unresponsive female in the area of Logan and Blaine Roads in rural Garfield County. When Trooper Cottrill arrived at the scene, he noted that emergency medical workers were already there and were attending to the woman, Shannon Kirkhart, who was pronounced dead at the scene a short time later. Trooper Cottrill spoke with Kelly Burtrum, who identified himself as the driver of the ATV at the time of the accident. Trooper Cottrill noticed, while speaking with him, that Burtrum smelled slightly of alcohol. Trooper Cottrill told Burtrum that state law requires the draw of blood in accidents involving serious injury or death. Burtrum was cooperative and rode with Trooper Justin Barney to Burtrum's house to retrieve the victim's identification, and then to the hospital where his blood was drawn. Subsequent analysis showed that Burtrum had a .109 blood alcohol content and the charges filed in this case followed.

¶5 At the preliminary hearing, the State called Troopers Cottrill and Barney to testify. Trooper Cottrill testified that when he arrived at the scene, Burtrum explained to him that he had been driving the ATV at the time of the accident. While he was driving, he turned his head to hear what Kirkhart was saying to him and when he returned his attention to the road, he was approaching a T-intersection and couldn't make the turn causing the ATV to roll into an embankment. Trooper Cottrill testified that he smelled a "slight odor" of alcohol on Burtrum and that Burtrum admitted to consuming five to six beers.

¶6 After the medics attending to Kirkhart determined that she had died, and Trooper Cottrill advised Burtrum that a draw of his blood would be necessary, Burtrum responded, "Fine, no problem." Trooper Cottrill testified that, "State law allows us to draw blood. He said he would give blood. If he said no, we would have went with a search warrant." Trooper Cottrill added, "My choice not to seek a search warrant was based on we have a state law that says we can, and we knew there was some alcohol in the system."

¶7 Trooper Barney testified at preliminary hearing that it was "determined that a consensual blood draw was going to be needed" so he transported Burtrum to the hospital for the blood draw. On the way there, he, too, detected a "slight odor" of alcohol on Burtrum. Trooper Barney testified that he filled out the Blood Test Officer's Affidavit before Burtrum's blood was drawn. This included checking the consent box before Burtrum signed it. While the form indicates that Burtrum was informed of the implied consent request, Trooper Barney acknowledged that he did not read Burtrum his implied consent card or advise him that he had the right to refuse the blood test. It was Trooper Barney's understanding that Oklahoma law does not require consent but rather requires the driver in a fatality accident submit to a blood draw.

¶8 At the close of the preliminary hearing, defense counsel entered a demurrer to the evidence arguing that Burtrum could not be found to have given his consent to the blood draw because he was never asked to give his consent; the troopers clearly did not think they needed Burtrum's consent. The prosecutor argued in turn that the Blood Test Officer's Affidavit indicated that Burtrum was advised of his right not to consent to the blood draw, which is contra to Trooper Barney's testimony.

¶9 The Honorable Brian N. Lovell, Special Judge, found that the exclusionary rule, the purpose of which is to deter police misconduct, does not apply in this case as there was no police misconduct to deter by suppressing the evidence. The judge found that "Trooper Cottrill's reliance on [47 O.S.2011, §] 10-104(B) was objectively reasonable and unquestionably done in good faith." The judge overruled the demurrer and bound Burtrum over for trial.

¶10 Prior to trial, defense counsel filed a motion the district court treated as a motion to suppress the blood test. At the motion hearing, the State called Troopers Cottrill and Barney to provide testimony supplemental to the testimony they gave at the preliminary hearing. Trooper Cottrill testified that after being notified that Kirkhart had died, he advised Burtrum that because there was a fatality, state law required them to draw his blood. Trooper Cottrill said that Burtrum was obviously distraught but very cooperative; Burtrum replied, "Whatever you need." Trooper Cottrill stated that he was not required to ask Burtrum for consent to draw his blood because it was required by state law.

¶11 Trooper Barney testified at the motion hearing that because state law required Burtrum's blood be drawn, he was not required to advise Burtrum of implied consent; Burtrum could not refuse the test. Nonetheless, Trooper Barney testified that Burtrum "portrayed consent through his actions and willingness to cooperate" after having been told that he was required by law to submit to the blood draw. Trooper Barney noted that Burtrum rode, unhandcuffed, in the front passenger seat when they went to his house to get Kirkhart's ID and then on the way to the hospital.

¶12 At the close of the hearing, the district court found that Burtrum was under arrest at the time he submitted to the blood draw because, under the totality of the circumstances surrounding the incident, Burtrum would have believed that he was not free to leave until blood was drawn. The court also found that Burtrum did not freely and voluntarily consent to the blood draw as, "[s]ubmitting to a uniformed officer's directive is not the equivalent of consent when you are provided no other option." Thus, the district court sustained Burtrum's motion to suppress.

¶13 The State challenges this ruling on appeal.[1] This Court reviews a trial court's ruling on a motion to quash for an abuse of discretion. State v. Farthing, 2014 OK CR 4, ¶ 4, 328 P.3d 1208, 1209 (citing State v. Delso, 2013 OK CR 5, ¶ 5, 298 P.3d 1192, 1194). We have found an abuse of discretion to be "any unreasonable or arbitrary action taken without proper consideration of the facts and law pertaining to the issue; a clearly erroneous conclusion and judgment, clearly against the logic and effect of the facts." Id. (citing Neloms v. State, 2012 OK CR 7, ¶ 35, 274 P.3d 161, 170).

DISCUSSION

¶14 The Fourth Amendment protects the "right of the people to be secure in their persons . . . against unreasonable searches" and provides that "no warrants shall issue, but upon probable cause." U.S. Const. amend, IV. Drawing a suspect's blood is a search of the person, and therefore requires a warrant based upon probable cause, unless it falls within one of the narrowly-drawn exceptions to the warrant requirement. See Birchfield v. North Dakota, 579 U.S. 438, 455 (2016) (the taking of a blood sample is a search); Missouri v. McNeely, 569 U.S. 141, 148 (2013) (a warrantless blood draw is reasonable only if it falls within a recognized exception to the warrant requirement).

¶15 One exception to the warrant requirement is that a search is not unreasonable where it is preceded by a free and voluntary consent. Burkham v. State, 1975 OK CR 150, ¶ 5, 538 P.2d 1121, 1122; Riggle v. State, 1978 OK CR 121, ¶ 20, 585 P.2d 1382, 1386. "[W]here the validity of a search rests on consent, the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority." Florida v. Royer, 460 U.S. 491, 497 (1983). See also Burton v. State, 2009 OK CR 10, ¶ 14, 204 P.3d 772, 776 ("where the State claims consent as an exception to the warrant requirement, the proof offered by the State must be clear and convincing that the waiver was a free and voluntary act").

¶16 "The question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973). When considering the totality of the circumstances, some of the relevant considerations include:

physical mistreatment, use of violence, threats, promises, inducements, deception, trickery, or an aggressive tone, the physical and mental condition and capacity of the defendant, the number of officers on the scene, and the display of police weapons. Whether an officer reads a defendant his Miranda rights, obtains consent pursuant to a claim of lawful authority, or informs a defendant of his or her right to refuse consent also are factors to consider in determining whether consent given was voluntary under the totality of the circumstances.

United States v. Sawyer, 441 F.3d 890, 895 (10th Cir. 2006) (internal citations omitted).

¶17 The district court's conclusion that Burtrum's consent to the blood draw was not voluntary was based largely on the evidence that the troopers told Burtrum that a blood draw was required by state law and that they did not advise him of his right to refuse. As to this latter point, the Fourth Amendment does not require informing a person of their right to refuse in order for that consent to be voluntary. "While knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the sine qua non of an effective consent." Ohio v. Robinette, 519 U.S. 33, 39 (1996) (quoting Schneckloth v. Bustamonte, 412 U.S. at 227).

¶18 But failure to advise Burtrum of his right to refuse consent is not the elemental problem in this case; the root of the issue is that the troopers erroneously told Burtrum he was required by law to give a blood sample - a demand to which he dutifully complied. The statute upon which the trooper relied, 47 O.S.2011, § 10-104(B), requires that a driver's blood be drawn for analysis in certain circumstances, without any requirement of a warrant or exigent circumstances.[2] However, in Stewart v. State, 2019 OK CR 6, 442 P.3d 158, handed down a year prior to the incident in this case, this Court rejected as violative of the Fourth Amendment, a broad reading of Section 10-104(B) that would permit the seizure of blood without a search warrant or a showing of probable cause and exigent circumstances. Instead, to pass constitutional muster, this Court held:

[M]ore than simple compliance with the statute is required in order to justify the warrantless seizure of blood from an intoxicated driving suspect. There must be an individualized determination of probable cause by a magistrate based upon the totality of the facts of each case, and the issuance of a search warrant, unless some exigent circumstance(s) renders it impractical to obtain a warrant beforehand. In those cases where police act without a warrant, a magistrate will rule upon the existence of probable cause and exigent circumstances, if and when the seizure is later challenged through a motion to suppress. These are the same, familiar Fourth Amendment principles applied in nearly every other Fourth Amendment search and seizure context.

Stewart, 2019 OK CR 6, ¶ 14, 442 P.3d at 163-64 (internal footnotes omitted).

¶19 We noted in Stewart that Section 10-104(B) creates a "per se finding of probable cause, completely eliminating any role of the magistrate in ruling upon probable cause or exigency either before or after the seizure of a suspect's blood. This departs from a foundational Fourth Amendment principle that requires probable cause be determined by a neutral and detached magistrate on a case-by-case basis." Stewart, 2019 OK CR 6, ¶ 10, 442 P.3d at 162. As did the United States Supreme Court in Missouri v. McNeely, this Court, in Stewart, rejected the claim that the dissipation of alcohol in a suspect's bloodstream creates a blanket and per se exigency, holding instead that, "[w]hether a warrantless blood test of a drunk suspect is reasonable must be determined case by case based on the totality of the circumstances." Stewart, 2019 OK CR 6, ¶ 5, 442 P.3d at 161 (citing McNeely, 569 U.S. at 156). Section 10-104(B) creates just that sort of prohibited blanket rule, except by statute rather than as an exception to the warrant requirement.

¶20 In Stewart, we stopped short of holding Section 10-104(B) facially unconstitutional, but we made clear that relying solely upon the statute, without independent probable cause and exigent circumstances, and without consent, violates the Fourth Amendment. We reiterate and stress that holding here: Section 10-104(B) is functionally useless and clearly unconstitutional insofar as it purports to grant law enforcement the ability to draw blood from a motorist without satisfying the Fourth Amendment. This means that regardless of the current text of this statute, law enforcement may not compel a blood draw based solely on the fact that a driver could be ticketed in a crash involving death or great bodily injury. If no warrant is obtained, there must either be a lawful consent, or there must be probable cause and some exigent circumstance present.[3] Our holding today in no way changes nor speaks to the quantum of evidence required to establish probable cause in these cases, as we stressed in Stewart:

Today's opinion does not hold that the fact of a fatality or serious injury crash cannot support a finding of probable cause to seize blood from a driver. Indeed, a law enforcement officer with substantial training and experience in vehicle collision investigation, establishing a crash had no apparent benign cause, may be found sufficient to issue a warrant or, coupled with exigent circumstances, to support a warrantless seizure of the suspect's blood. The point is that such probable cause determinations must be made on a case specific basis by a neutral and detached magistrate.

Stewart, 2019 OK CR 6, ¶ 14 n. 2, 442 P.3d at 163, n. 2.

¶21 In this case the law enforcement officers were obviously led astray by the fact that this statute is still on the books, unchanged, even after our Stewart decision.[4] When a statute conflicts with constitutional principles, it is clear the statute must give way. "Our state and federal constitutions are the bulwark to which all statutes must yield." Tulsa Stockyards, Inc. v. Clark, 2014 OK 14, ¶ 27, 321 P.3d 185, 196.

¶22 As noted above, the events in this case occurred more than a year after our Stewart case was published and so, unlike the troopers in Stewart, their reliance upon Section 10-104(B) does not fall within the good faith exception to the exclusionary rule. In ruling on the motion to suppress, the trial court found the same, noting that "simple reliance on the statute [was] not in good faith. The rule otherwise would allow law enforcement to ignore the requirements set forth in Stewart and continue with per se reliance on 47 O.S. 10-104(B) in all accident investigations involving traffic offenses and immediate death or great bodily injury." And while there are some factors tending to show Burtrum freely consented to the search, it was equally reasonable, and therefore not an abuse of discretion, for the trial court to find that his consent was simply a capitulation to what the troopers had indicated was inevitable under state law. Accordingly, we find that the district court did not abuse its discretion in finding that Burtrum's consent to the blood draw was not consensual and thus subject to the exclusionary rule.

DECISION

¶23 The ruling of the district court sustaining Appellee's Motion to Quash is AFFIRMED. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2023), the MANDATE is ORDERED issued upon delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT
OF GARFIELD COUNTY,
THE HONORABLE DENNIS HLADIK, DISTRICT JUDGE

 
 
 
 APPEARANCES IN DISTRICT COURT
 
 
 APPEARANCES ON APPEAL
 
 
 
 
 SEAN K. HILL
 TYLER FOSTER
 ASST. DISTRICT ATTORNEYS
 GARFIELD COUNTY
 COURTHOUSE
 114 W. BROADWAY
 ENID, OK 73701
 ATTORNEYS FOR STATE
 
 
 SEAN K. HILL
 TYLER FOSTER
 ASST. DISTRICT ATTORNEYS
 GARFIELD COUNTY
 COURTHOUSE
 114 W. BROADWAY
 ENID, OK 73701
 ATTORNEYS FOR STATE
 
 
 
 
 CLINT CLAYPOLE
 LONG, CLAYPOLE &
 BLAKLEY LAW, PLC
 P.O. BOX 3623
 ENID, OK 73702
 ATTORNEY FOR DEFENDANT
 
 
 CLINT CLAYPOLE
 LONG, CLAYPOLE &
 BLAKLEY LAW, PLC
 P.O. BOX 3623
 ENID, OK 73702
 ATTORNEY FOR APPELLEE
 
 
 

 

OPINION BY: ROWLAND, P.J.
HUDSON, V.P.J.: Concur
LUMPKIN, J.: Specially Concur
LEWIS, J.: Concur in Results
MUSSEMAN, J.: Concur

FOOTNOTES

[1] Again, we only address the trial court's ruling as to the consent to search as this issue is dispositive of the case.

[2] Title 47 O.S.2011, § 10-104(B) provides as follows:

Any driver of any vehicle involved in an accident who could be cited for any traffic offense where said accident resulted in the immediate death or great bodily injury, as defined in subsection B of Section 646 of Title 21 of the Oklahoma Statutes, of any person shall submit to drug and alcohol testing as soon as practicable after such accident occurs. The traffic offense violation shall constitute probable cause for purposes of Section 752 of this title and the procedures found in Section 752 of this title shall be followed to determine the presence of alcohol or controlled dangerous substances within the driver's blood system.

[3] The district court noted, accurately, that in the present case there were no exigent circumstances justifying a warrantless search. Indeed, neither trooper testified that the warrantless blood draw was justified by exigent circumstances and the State acknowledged the same stating, "the blood draw in this case was not driven by exigent circumstances."

[4] We urge the Legislature to revise this statute to comport with constitutional principles so that law enforcement will not erroneously rely upon it in the future.

 

 

Lumpkin, J., Specially Concur:

¶1 I join in the Court's analysis and decision and write to point out the duty of law enforcement leaders to ensure all personnel are regularly subject to continuing education to ensure they are up to date on all existing law relating to their duties. The result in this case could have been avoided IF the troopers involved had been advised of this Court's decision in Stewart.[1] The Oklahoma Legislature is sometimes slow in updating statutes to current interpretations of the statutes as to compliance with Constitutional requirements.

¶2 This court may have been too subtle in its legal analysis and enunciating its decision in Stewart, but lawyers in agencies and district attorneys' offices should have seen the clear message and informed those law enforcement officers working with them of the law relating to blood tests in this kind of situation. To ensure the message is clear and simple: law enforcement personnel cannot ordinarily require a person involved in a traffic accident which involves a fatality or serious bodily injury to take a blood test based on those facts alone. The officer must comply with the implied consent law as defined in Stewart and the decision in this case.

¶3 Law enforcement agencies and officials have a duty to educate their officers on the proper law and procedure to follow in complying with the law and that is the message of this decision.

FOOTNOTES

[1] Stewart v. State, 2019 OK CR 6, 442 P.3d 150.

 

 

LEWIS, J., CONCUR IN RESULTS:

¶1 I continue to believe that 47 O.S.2021, § 10-104(B), is constitutional and provides the equivalent constitutional protection as the warrant requirement under the 4th Amendment, as stated in my special writing in Stewart v. State, 2019 OK CR 6, 442 P.3d 158. However, Stewart was the law at the time of this incident; therefore, the trial court was required to follow that holding. Under the principle of stare decisis, I concur in the Courts decision.

 

 

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases

 
Cite
Name
Level

 
1978 OK CR 121, 585 P.2d 1382, 
RIGGLE v. STATE
Discussed

 
2009 OK CR 10, 204 P.3d 772, 
BURTON v. STATE
Discussed

 
2012 OK CR 7, 274 P.3d 161, 
NELOMS v. STATE
Discussed

 
2013 OK CR 5, 298 P.3d 1192, 
STATE v. DELSO
Discussed

 
2014 OK CR 4, 328 P.3d 1208, 
STATE v. FARTHING
Discussed

 
2019 OK CR 6, 442 P.3d 158, 
STEWART v. STATE
Discussed at Length

 
1975 OK CR 150, 538 P.2d 1121, 
BURKHAM v. STATE
Discussed

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
2014 OK 14, 321 P.3d 185, 
TULSA STOCKYARDS, INC. v. CLARK
Discussed

Title 21. Crimes and Punishments

 
Cite
Name
Level

 
21 O.S. 711, 
First Degree Manslaughter
Cited

Title 22. Criminal Procedure

 
Cite
Name
Level

 
22 O.S. 1053, 
State or Municipality May Appeal in What Cases
Cited

Title 47. Motor Vehicles

 
Cite
Name
Level

 
47 O.S. 10-104, 
Duty to Give Information and Render Aid - Drug and Alcohol Testing
Discussed at Length

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA