Robert Lee HARRIS, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13293.

Court of Criminal Appeals of Oklahoma.

May 22, 1963.

Rehearing Denied July 3, 1963.

Valdhe F. Pitman and Malcolm M. Baucum, Oklahoma City, for plaintiff in error.

Charles Nesbitt, Atty. Gen., Jack A. Swidensky, Asst. Atty. Gen., for defendant in error.

NIX, Judge.

Robert Lee Harris, hereinafter referred to as the defendant was charged by Information in the District Court of Oklahoma County with the crime of Second Degree Burglary. He was tried before a jury, found guilty, and sentenced to serve a term of two years in the Oklahoma State Penitentiary.

The defendant perfected his appeal in this Court in the time prescribed by law asserting 3 propositions of error. The defendant was convicted by a chain of circumstantial evidence and that chain is agreed upon by the parties to this action to be as follows:

The Oklahoma Tire and Supply Store at 1612 N.E. 23 St., Oklahoma City, was entered and a second-hand lawnmower was taken. The entry was made after removing two boards that had been placed over a broken window in the overhead garage

door. The place entered was wired by the A.D.T. Burglar Alarm System and the alarm was set off at 2:39 A.M., and the police notified. The defendant was then seen coming across a parking lot in front of the Oklahoma Tire and Supply Company's front door with his lights off shortly after 2:39 A.M. by the police who arrived on the scene. They gave chase at a high rate of speed. Defendant lost control of his car and jumped a curb and was stopped after the police fired a shot and after a chase of several blocks. In the front seat of defendant's car was the lawnmower alleged to have been taken from the store. Upon being stopped, according to the officers, the following statements were made: "He then told us that 'It isn't what you think, why don't you let me go and we will forget about this', the officer said 'We couldn't do that the way it looked, and that the Lt. was on his way', and he said, 'Did you call in', and I said 'Yes'. He said 'Well' and stepped back out of his car". In the car was the lawnmower allegedly taken from the store and also seven suits and a sport coat and shirts; part of which had been taken in a burglary at Park's Clothing Store in Oklahoma City.

The first contention of error alleged by defendant pertains to the admission of evidence as to the A.D.T. burglar alarm. Defendant contends the time of entry was established by the alarm system which resulted in apprehension of the defendant near the scene of the crime; that the scientific reliability of the A.D.T. alarm system was not proven, therefore, any testimony as to the time of its alarm was inadmissible.

This question of law arose in the instant case by the testimony of an employee of the American District Telephone Service, who conduct the burglar alarm system. It is an electrical system that has a device in the store that carries the current back to the central office. In other words, the store having their service is wired around windows and doors so that when the circuit is broken, it relays that information back to the central office. A flag signal in the central office is lowered by the current being broken and this constitutes the alarm.

The garage door in the store in question was wired so that when the door was raised, it broke the circuit and the signal so indicated in A.D.T.'s central office.

In the case at bar, the method by which the system works was brought out at great length on cross-examination by defense counsel, Mr. Pitman, who later objected to its admission. The trial court overruled the objection and the evidence as to the time the burglar alarm signaled, was admitted. The testimony to which defendant objects is as follows:

"Q. I see. Now, from your records, do you know or are you familiar with the premises of 1612 N.E. 23 St?

"A. I am familiar with it to the extent that when this alarm occurred I went out there and saw it.

"Q. When you speak of the—'when the alarm occurred', how does that work, tell the Court and Jury?

"A. Well, we have batteries that send the current out on the lines and we have a system in the store and the current goes through these lines, through the system, back to the central office and in this little office we have two little flags that stand up when the current is broken and when the relay is broken these flags are dropped and that is called the alarm.

"Q. Now, were the premises, on March 19th, 1962, after midnight of that day, were the premises at 1612, recorded with the ADT system?

"A. It was.

"Q. And do you known what doors were wired with reference to the building?

"A. The front door was wired on the 23rd street side, the north side of the building,—

"MR. BAUCUM: Comes now the defendant and objects to the introduction of any further evidence in reference to the ADT system until it is —until its scientific reliability has first been established to the Court, outside the presence of the jury.

"THE COURT: I beg your pardon, sir.

"MR. BAUCUM: There is nothing in the record to show whether it is scientifically reliable or not.

"THE COURT: Come up, gentlemen, please. (Thereupon a consultation was had between Court and Counsel out of the hearing of the Reporter and Jury.)

"THE COURT: Overruled, exceptions.

"MR. MOUNGER: What was the last question I asked him? (Question read by Reporter to Mr. Mounger.)

"Q. (By Mr. Mounger) Now, Mr. Almon, continue. You say the front door on the 23rd street side was wired?

"A. Yes, sir.

"Q. Now, will you tell the Court and Jury what other doors were wired with the ADT system?

"A. The partition door between the garage, was broken into, and the store itself was wired.

"MR. BAUCUM: We object again.

"A. (continuing) Was wired.

"MR. BAUCUM: Just a minute, please.

"MR. PITMAN: We object if the Court please, he said something was broken into, there hasn't been anything like that established in the evidence as yet.

"THE COURT: That portion of the answer about something being bro-ken into, is stricken and the jury is instructed to disregard it at this time.

"Q. (By Mr. Mounger) Now, directing your attention to the 19th day of March, 1962, were you on duty at the ADT office, that morning?

"A. Yes, I was.

"Q. Tell the Court and Jury what you know with reference to signals coming in?

"MR. PITMAN: We would like the time.

"A. At the time of the alarm, which indicated that a door had been opened and when I saw this, my supervisor was standing a little ways from me and I said—

"THE COURT: Wait a minute.

"Q. (By Mr. Mounger) Don't state what you said, just tell what you did.

"A. Well, when I received the alarm the first thing I did was pick up the police dispatch telephone and I pulled out the Bureau file and looked up the file and the number of the alarm and got the address and give the address to the dispatcher and told him we had an alarm at the Oklahoma Tire and Supply Company.

"Q. I am not trying to lead you, but when you got the signal you knew what the address was from that signal?

"A. No, the number on the signal.

"Q. And that number leads you to the proper address?

"A. That's right.

"Q. And what was it?

"A. 1612 Northeast 23rd Street.

"Q. And what company would that be?

"A. That was Oklahoma Tire and Supply.

"Q. Can you give us the time?

"A. Exactly at 2:39 according to the stamp.

"Q. 2:39 a. m.?

"A. Yes, sir.

"Q. Now, I believe you testified then you notified the police dispatcher?

"A. Yes, I did.

"Q. Now, did you go out to the premises after that?

"A. As soon as my supervisor stamped the card I took the cards and left and went immediately to the store.

"Q. That the signal came from?

"A. Yes, sir.

"Q. Tell the Court and Jury what you found there when you arrived at the store at 1612 Northeast 23rd St?

"A. When I arrived at the store I drove up around the 23rd Street side and came to the place where the door was open and I found the overhead, where it goes up from the bottom, and that is the loading door, and there was a police car and some police officers standing there when I got there."

In support of defendant's contention that the reliability of the A.D.T. system was not established, therefore, the testimony as to the time of the alarm was inadmissible; he cites several cases, all of which have to do with such scientific instruments as the lie detector, drunkometer tests, blood tests, parafin tests, radar, and etc.; and the necessity of proving their scientific reliability.

The Court does not feel that these cases are in point.

■ We agree that mechanical devices are scientific instruments designed for obtaining results to prove the guilt or innocence of a defendant, in order to be admissible, require various degrees of evidence as to their scientific reliability.

■ In the instant case the mechanism known as the ADT was not used as evidence tending to prove the guilt or innocence of the defendant. The witnesses did not describe a test but a situation where a building (the one in question) was wired with a burglar alarm system known as A.D.T. That an indicator in their central office notified them the circuit in the building had been broken at a certain time and the police notified. The witness, Almon, attempted to testify that the signal indicated the store had been broken into and the trial judge upon objection, admonished the jury "that the portion of the answer about something being broken into, is stricken, and the jury is instructed to disregard it at this time." The witness admitted he did not know how the door was raised that broke the current; who raised the door; or who broke in the building.

The chief contention of defendant is that the evidence was admitted to establish the time of the burglary. The Court does not follow this reasoning.

The alarm sounded at a certain time, but the time was established by a timepiece of which the court requires no test except the credibility of the witness, unless the accuracy of the timepiece is questioned, and it was not in this instance. We fail to see where defendant's rights were invaded by this testimony. If he had not been found in the vicinity, the evidence would have been of little value, but he was apprehended in the vicinity and it was incumbent upon him to explain his presence. We fail to see error by the admission of this testimony.

Counsel for the defense next makes objection to certain photographs that were admitted in evidence as Exhibits 2, 3, and 4. Defendant's objection was based on the fact that said photos were not taken at the time of the burglary and did not represent a true picture of the scene at the time of the alleged offense.

The evidence shows that said photos were taken approximately 5 hours after the alleged time of the offense. The picture

chiefly complained of was one taken of the garage door where the entry occurred. The picture showed the door to be down at the time the photos were taken and defense counsel contends it was up immediately following the burglary. Also, boards had been placed over the window in the door that had been broken before the entry. Therefore, it is the contention of defendant that the pictures did not represent a replica of the scene at the time of the burglary and for that reason were inadmissible.

Little significance is attached to this proposition.

■ The photos attempted to depict the place where defendant gained entry and the premises in question. It was made clear that the pictures were taken about 5½ hours after the burglary and. that the door had been closed and the boards re-arranged over the broken window. In no way was an attempt made to mislead the jury as to this fact. It was an exact reproduction of what it purported to be. As was said in Hudman v. State, 89 Okl.Cr. 160, 205 P.2d 1175:

> "Photographs are admissable in evidence to illustrate or clarify some issue of the case where such photograph is shown to be a faithful reproduction of whatever it purports to reproduce."

Also, see Toms v. State, 95 Okl.Cr. 60, 239 P.2d 812–822.

■ The introduction of photos are usually left to the discretion of the trial judge, and the Court of Criminal Appeals will not disturb a verdict on those grounds unless there is a clear abuse of that discretion.

The Court said in the case of Garrett v. State, 95 Okl.Cr. 44, 239 P.2d 439–440:

> "[P]hotographs, drawings and maps, may be introduced in evidence as an aid to the jury for the purpose of explaining the locations and positions of objects which are material to the inquiry, but that their admission in evidence rests largely in the discretion of the trial court, and, unless this discretion is abused, it will not be cause for reversal."

We fail to see where the defendant suffered any prejudice by the admission of this evidence.

Defendant next complains that the State, in it's closing argument to the jury, made prejudicial remarks that constituted error. The argument was not recorded and the following excerpt is all that appears in the record now before us:

> "MR. BAUCUM: Comes now the defendant and moves the court to grant a mistrial herein for the reason of Mr. William Mounger's closing argument to the jury exhorting this jury to do their duty because the press is here; that is the gist of what he said.

> "THE COURT: You will disregard the argument by counsel about the press being present and I will overrule the Motion for a Mistrial and give you exceptions."

■ It is difficult to read excerpts from the record and determine whether or not the defendant was prejudiced thereby. It appears that the remarks if made in substance, were improper. But in order for the Court to determine the issue, the ultimate result must be considered. The defendant was charged with Burglary Second Degree, and there was sufficient evidence, if believed, to support a conviction. The minimum sentence was imposed, so we could hardly conclude the defendant was prejudiced by the remarks.

This Court said in Glasgow v. State, 88 Okl.Cr. 279, 202 P.2d 999:

> "Where the guilt of the defendant is clear, and there is no reason to believe that the jury could have arrived at any other verdict than guilty, this court will not reverse the case because of the improper conduct of the county attorney, but in the exercise of its discretion will modify the penalty imposed and affirm the judgment of the lower court."

We re-affirm the policy laid down herein except where the minimum sentence was imposed and in that event prejudice is not presumed.

▮ In the instant case, we have thoroughly reviewed the testimony and find no error of such a nature to justify reversal; therefore, the judgment and sentence of the trial court is hereby affirmed.

BUSSEY, P. J., and JOHNSON, J., concur.