David Gordon SMITH, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–79–688.

Court of Criminal Appeals of Okl.

June 14, 1982.

As Corrected July 23, 1982.

Rehearing Denied Nov. 22, 1982.

E. Terril Corley, Tulsa, for appellant.

Jan Eric Cartwright, Atty. Gen., William S. Flanagan, Asst. Atty. Gen., Tomilou Gentry Liddell, Legal Intern, Oklahoma City, for appellee.

## OPINION

BRETT, Presiding Judge:

The appellant, David Gordon Smith, was convicted of First Degree Murder, pursuant to Laws 1976, ch. 1, § 1, now 21 O.S.1981, § 701.7, in Rogers County District Court Case No. CRF–78–128. He was sentenced to life imprisonment and appeals.

On September 1, 1978, the Catoosa, Oklahoma, Tag Agency was robbed by two men identified as Jackie Ray Young and the appellant, David Gordon Smith. Catoosa Police Chief J.B. Hamby died of gunshot wounds sustained during an attempt to stop the robbery. It was later determined that Jackie Ray Young died at the scene of the crime from self-inflicted gunshot wounds.

The appellant was charged under the felony-murder doctrine for the murder of J.B. Hamby. He admitted to being present at the scene, but defended on the basis of being there under duress and participating in the robbery due to fear of imminent death from Jackie Ray Young.

Smith testified that Young was his neighbor at his apartment complex and that they had occasionally worked on cars together. He claimed that he was with Young on the morning of the robbery because he had agreed to help Young defraud an insurance company. This was to be accomplished by claiming Young's car was stolen, collecting the insurance money, and then selling the car. Smith further claimed that he agreed to help move the car because Young offered him five-hundred dollars ($500.00) which he needed to purchase an engagement ring for his fiance.

The appellant also testified that he first learned of Young's plan to rob the tag agency while he and Young were on their way to move the car. Young became very nervous and excited and pulled a gun when the appellant refused to participate. Each time Smith tried to talk Young out of the robbery, Young became increasingly agitated and upset, all the while keeping the gun on him. It was at this time that Young informed him of the details of the robbery.

When Smith and Young entered the tag agency, they pulled bandannas over their faces and ordered the two female clerks at gunpoint to lay on the floor. The appellant taped their hands behind their backs with silver duct tape. A customer who entered the office was ordered to join the two women on the floor. While the appellant and Young attempted to steal blank title registration forms and photographic materials, Police Chief J.B. Hamby drove up. Gunfire immediately ensued resulting in the death of Chief Hamby and Jackie Ray Young. The appellant, wounded in the right hand and thigh, ran out the door and escaped by car.

The appellant drove to the spot where Young had left another car, traded cars, and returned to his Tulsa apartment. He was subsequently transported by ambulance to the Oklahoma Osteopathic Hospital in Tulsa and arrested there later that day.

### I.

The appellant first alleges that the trial court committed error by refusing to allow Dr. Bill Scott, a psychologist at Oklahoma State University, to testify as an expert witness about eye witness behavior and responses under stress. The trial judge determined that the jury could make their own determination as to the ability of a witness to recall facts.

This Court has held on numerous occasions that whether or not a witness is allowed to testify as an expert witness rests within the discretion of the trial court whose decision will not be disturbed on appeal unless the discretion has been abused. *Riggle v. State,* 585 P.2d 1382 (Okl.Cr.1978). The trial court allowed the defense counsel to make an offer of proof as to Dr. Scott's testimony. We find no abuse of discretion resulted from the trial court's decision that the testimony would not aid the jury in its determination. Therefore no error occurred due to the exclusion of Dr. Scott as an expert witness. See 12 O.S.1981, § 2702.

■ The appellant also contends that the trial court erred by admitting exhibits which purportedly traced the paths of the bullets fired in the tag agency and by recognizing Police Officer Freiburger as an expert witness to sponsor the exhibits. Before scientific evidence is admissible, there must be proof that the reliability of the tests used has gained general acceptance and recognition in the concerned scientific community. See *Henderson v. State,* 94 Okl.Cr. 45, 230 P.2d 495 (1951) (lie detector tests).

■ After review of the scientific literature on the subject [1] it is apparent that the ability of an expert to determine the origin of a bullet's flight has gained general acceptance and recognition in the concerned scientific community. Therefore, the exhibits complained of concerned a proper topic upon which evidence is admissible. 12 O.S.1981, § 2702.

■ Testimony at the trial reveals Officer Freiburger had attended an F.B.I. sponsored advanced criminology school and a workshop on reconstruction presented by the Department of Public Safety in Texas. Much of his early training was in traffic which involved reconstructing scenes and he had worked in homicide for several years. On the basis of Officer Freiburger's qualifications, we find the trial court did not abuse its discretion by allowing Officer Freiburger to sponsor the exhibits portraying the paths of the bullets fired in the Catoosa Tag Agency. *Barnhart v. State,* 559 P.2d 451 (Okl.Cr.1977).

### II.

■ Secondly, it is argued that error occurred when the trial court allowed the State to introduce, during cross-examination of the appellant, certain guns and ammunition taken from the appellant's apartment. However, the appellant, either through misjudgment or inadvertence, made the guns relevant to the trial by bringing them up when he took the stand in his own behalf. This Court has stated many times that complaints concerning cross-examination will not be heard if the subject is addressed or opened on cross-examination. *Hill v. State,* 589 P.2d 1073 (Okl.Cr.1979).

### III.

■ The third proposition of error alleges that the appellant was denied a fair trial due to the misconduct of one of the jurors. It is first claimed that error occurred because Juror Wells misrepresented his ability to be unbiased during voir dire. This allegation is based on the appellant's observation that Juror Wells brought his wife to the trial each day where she appeared to be friendly with the victim's family. Further, at the hearing on the motion for new trial, both the appellant's mother and a friend of the appellant's family testified that they saw Juror Wells talking with members of the victim's family during a trial recess.

It is not apparent from the record that Juror Wells was untruthful on voir dire. The defense counsel had ample opportunity during voir dire examination to ask Mr. Wells whether he was acquainted with the victim's family. No attempt was made to inquire into such matters; the only questions asked were whether Mr. Wells knew the victim personally, and whether he knew

---

1. Haag, The Forensic Use of Exterior Ballistic Calculations, *Association of Firearm and Tool Mark Examiners Journal* # 13; J. Hatcher, *Hatcher's Notebook* 3d ed., ch. 23; Haag, Bullet Impact Spalls in Frangible Surfaces, 124 *AFTE* Journal # 71 (Oct. '80).

any of the witnesses. The defense counsel did not attempt to challenge Juror Wells peremptorily or for cause.

This Court has repeatedly held that it is the appellant's duty on voir dire examination to inquire into all matters which are within his knowledge and which might affect a juror's qualifications, and if he fails to do so, he waives any objection on that point even though disqualification is unknown to him until after the verdict is rendered. *Johnson v. State,* 597 P.2d 340 (Okl.Cr.1979); *Greathouse v. State,* 503 P.2d 239 (Okl.Cr.1972). We find that the appellant waived his right to object to Juror Wells' service on the jury panel because of defense counsel's failure to thoroughly question Mr. Wells about his acquaintance with the victim's family.

▪ Also, we can discern no error as a result of Mr. Wells' wife attending the trial and speaking to the victim's family. During voir dire Juror Wells stated that he was aware he could not discuss this case with his wife because he had previously served on a jury. He believed he could be open-minded in light of such a serious charge and that he would not discuss the case with others including his wife and children. Jurors are not required to be totally ignorant of facts and issues involved and it is sufficient if the juror can lay aside his impressions or opinion and render a verdict based on the evidence presented in court. *Shapard v. State,* 437 P.2d 565 (Okl.Cr.1967), *cert. denied,* 393 U.S. 826, 89 S.Ct. 89, 21 L.Ed.2d 97 (1967).

▪ The appellant further argues that error occurred when the trial court refused to allow Juror Wells to testify at the hearing on Motion For New Trial because a juror is not allowed to impeach the verdict of a jury. Clearly, a juror may not impeach the jury's verdict by his own statement. However, impeachment of the jury's verdict means invading the sanctity of the jury room. It is not error for a judge to call a juror to testify as to alleged misconduct. Specifically, 12 O.S.1981, § 2606, states that "[a] juror may testify on the question whether . . . any outside influence was improperly brought to bear upon any juror."

▪ When the trial judge ruled that the juror could not testify, the defense counsel failed to cite relevant authority for his argument. Moreover, no other witnesses were called to testify in support of the allegation. The trial court's ruling barring Juror Wells from testifying did not prevent the appellant from calling members of the victim's family to the stand. This Court has held several times that in a capital case where misconduct of the jury is alleged, if the misconduct occurred before the case is finally submitted to the jury, the burden is on the appellant to show that the alleged misconduct was prejudicial to him. *Carpitcher v. State,* 586 P.2d 75 (Okl.Cr.1978).

This Court has previously stated that "it is of the utmost importance that triers who pass upon the lives and liberties of men should so act that no possible suspicion can attach to them of having been in a position where improper influence, prejudicial to the accused or in his favor, may have operated on their minds." *Townley v. State,* 355 P.2d 420 (Okl.Cr.1960). However, because the appellant failed to pursue all avenues available to him to prove the alleged bias of Juror Wells, we hold that he did not sustain his burden of proof. *Carpitcher v. State,* supra. We therefore find no merit to this proposition of error.

### IV.

▪ The appellant next complains that the trial court allowed the prosecution to violate his U.S. Constitutional right to remain silent. At trial, the appellant testified that prior to committing the robbery, he "fully intended to call the police. . ." Later, the prosecutor, in attempting to impeach the credibility of the appellant, remarked that the appellant could have surrendered or called the police because he had a telephone.

The Supreme Court recently addressed this exact issue in *Jenkins v. Anderson,* 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980). The court stated:

Once a defendant decides to testify, '[t]he interests of the other party and regard

for the function of the courts of justice to ascertain the truth become relevant, and prevail in the balance of considerations determining the scope and limits of the privilege against self-incrimination. (citations omitted)

Thus, impeachment follows the defendant's own decision to cast aside his cloak of silence and advances the truthfinding function of the criminal trial. We conclude that the Fifth Amendment is not violated by the use of pre-arrest silence to impeach a criminal defendant's credibility. *Jenkins,* at 100 S.Ct. 2129.

We find, in accordance with *Jenkins v. Anderson* that no violation of the appellant's Fifth Amendment right occurred.

## V.

■ The record reflects that the appellant was taken by ambulance to the emergency room of the Oklahoma Osteopathic Hospital at approximately 11:30 a.m. on September 1, 1978, with wounds to his hand and leg. While in the emergency room, an O.S.B.I. agent read the appellant the *Miranda* rights. The appellant at that time told the agent he did not want to answer any questions and would talk when his girlfriend arrived. Approximately an hour later, after being transferred to a hospital room, Larry Johnson, a Tulsa Police Officer, came to see the appellant. Smith was again informed of his *Miranda* rights and told that his fingerprints and photograph were going to be taken. Officer Johnson then told Smith that he was a suspect in a shooting and attempted robbery at the Catoosa Tag Agency and the police had connected him with Jackie Ray Young, another person involved in the robbery. Officer Johnson remarked, "Your partner didn't make it," "Jackie is dead" and "He was dead at the scene." Smith then responded, "But I got away." Officer Johnson asked if he had anything further to say and the

appellant restated his wish to speak to his girlfriend before saying anything further.

The appellant claims this statement was taken in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) because it was not made after a knowing and voluntary waiver of his right to remain silent. At the conclusion of an in-camera hearing held to determine the admissibility of the statement, the trial judge found that the appellant had been advised of his *Miranda* warnings prior to any statements he made on September 1st, that the statement, "But I got away" was not made in direct response to any interrogation or force or coercion on the part of the police officers, and therefore it was voluntary. We agree that the trial court was correct in its findings and would further add that the appellant did not invoke his right to remain silent until after the statement was made at which time all conversation ceased. Therefore, the appellant's proposition of error is without merit. *Phelps v. State,* 598 P.2d 254 (Okl.Cr.1979).

## VI.

■ The appellant's sixth assignment of error asserts that the trial court erred in admitting evidence of the victim's character during the State's case-in-chief and again in rebuttal. In the State's case-in-chief, Police Sergeant Johnson, over the appellant's objection, testified that the victim, Police Chief Hamby was an excellent police officer. It is clear that this portion of Sergeant Johnson's testimony was elicited to prove that the victim acted in accordance with the given character evidence on the day of the crime. This is expressly forbidden by the Oklahoma Evidence Code, 12 O.S.1981, § 2404, subd. A.[2] However, even though the evidence was improperly admitted, we are of the opinion that its exclusion would not have caused the jury to arrive at a different verdict. *Brown v. State,* 563 P.2d 1182 (Okl.Cr.1977). This Court has

**2.** Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion except: 2. Evidence of a pertinent trait of character of the victim offered by an accused or by the prosecu-

tion to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor.

stated many times that even if there is error during a trial, this alone is not sufficient to require reversal. The error must injure the defendant and the burden is on him to establish that he was prejudiced in his substantial rights by the error. *Cottrell v. State,* 458 P.2d 328 (Okl.Cr.1969). The appellant has failed to show sufficient prejudice resulted from the evidence and therefore we find the error was harmless.

▮ The appellant also complains of testimony presented by the State in rebuttal concerning the character and reputation of the deceased. He argues that the evidence was improperly admitted because it was irrelevant. At trial, the appellant proposed as part of his defense that he was unarmed almost immediately after the robbery began. He further testified that Officer Hamby walked directly up to him and pointed a revolver at him. The evidence offered by the State of Officer Hamby's reputation as a policeman was relevant to rebut the implication that Hamby shot an unarmed suspect at close range. Therefore, the trial court did not abuse its discretion by allowing the testimony pursuant to 12 O.S.1981, § 2404, subd. A(2).

## VII.

The appellant next contends that the trial court erred in not recognizing the statutory limitations upon the authority of the Tulsa Police Department to investigate the crime scene in Rogers County. Larry Johnson, a police officer for the City of Tulsa, testified at a preliminary hearing held October 27, 1978, that he was called to the scene of the Catoosa Tag Agency on the first of September, where Chief Jerry Horton, Chief of the Oklahoma Highway Patrol, State Police, requested that he take charge of the crime scene investigation. Johnson told Chief Horton that he would assist Horton in holding and preserving the scene until the Rogers County authorities could get there. Amos Ward, the Sheriff of Rogers County, then arrived and made a formal request for assistance from the Tulsa Police Department in the investigation of the crime scene.

▮ The appellant relies upon *Graham v. State,* 560 P.2d 200 (Okl.Cr.1977), for the proposition that the Tulsa policemen had no statutory authority to investigate the crime scene in Catoosa and further that all evidence obtained by the Tulsa police in Catoosa must be suppressed. With this, we must disagree. In *Graham v. State,* supra, we held that an off-duty police officer may not conduct a warrantless search of a residence outside the corporate limits of the city. We went on to state that:

There are, of course, exceptions to the general rule that a police officer's authority cannot extend beyond his jurisdiction.... Furthermore, one municipality can request the assistance of another municipality's police officers pursuant to 11 O.S.1971, § 20.6, [now 11 O.S.1971, § 34–103]. These examples are but illustrations of exceptions to the general rule, and this opinion shall not be construed as limiting police officers in operating outside their jurisdiction where it is otherwise authorized by statute or decisions of this Court or Federal Courts which create other exceptions.

Title 11 O.S.1981, § 34–103 states:

Under emergency situations members of the regular police department of any municipality, upon request of the mayor or chief of police of any other municipality, may serve as police officers in the municipality requesting their assistance upon approval of the governing body of the municipality where such officers are regularly employed.

It is true, as the appellant asserts that the sheriff of Rogers County rather than the mayor or chief of police requested that Officer Johnson assist in the investigation. Also, the governing body of Tulsa did not give formal approval. However, it is our determination that although the statute was not explicitly complied with, the appellant has not shown this Court he was prejudiced by the actions of Sheriff Ward and Officer Johnson, so as to justify suppression of the evidence obtained in the investigation in Catoosa. We have held numerous times that "not only must there be error but there must also be injury. The burden is upon the defendant to establish he was prejudiced in his substantial rights." *Sallee v. State,* 544 P.2d 902 (Okl.Cr.1976).

■ Further, it is impossible for us to see how the participation of the Tulsa Police Department in the investigation could have possibly prejudiced the appellant. The suspects first conspired to commit the robbery in Tulsa. They both resided in Tulsa. The appellant fled to his Tulsa apartment after the murder. The appellant was arrested at a Tulsa hospital pursuant to a legitimate arrest warrant from Rogers County. The efficient operation of our criminal justice system mandates that one law enforcement agency assist another in circumstances such as existed here, where the manpower, expertise and resources were needed at that immediate time. See, 10 OP. A.G. 115 (August 5, 1977). The appellant's proposition of error is therefore without merit.

### VIII.

■ The first three contentions of the final proposition claim error based on remarks made by the prosecution. The appellant alleges that the remark:

his folks aren't on trial ... and this boy that runs the shoe store and his wife aren't on trial. And this happened and we are not concerned with how good a boy it was before it happened.

was in conflict with the trial court's Instruction No. 12, informing the jury that the character and reputation of the appellant could be considered in their deliberations as to guilt. We disagree. The prosecutor was not contradicting the instruction as to the appellant's character but merely discussing the fact that his parents and certain character witnesses were not on trial. Further, the remark made referring to the appellant's character was clearly within the bounds allowed for closing argument. *Frazier v. State,* 607 P.2d 709 (Okl.Cr.1980).

■ In regard to this same subject, the prosecutor also stated that: "Do you know they have got a man charged now in Oklahoma County with six murders that's got nothing but a traffic record.... " The appellant claims this was an indirect reference to the highly publicized Oklahoma City Steakhouse Murders which could have prejudiced the jury. While we do not condone such remarks, we do believe the trial court's immediate admonishment to the jury to disregard the remark was sufficient to cure any error. *Jones v. State,* 595 P.2d 1344 (Okl.Cr.1979); *Tharps v. State,* 555 P.2d 1054 (Okl.Cr.1976); *Montgomery v. State,* 447 P.2d 469 (Okl.Cr.1968).

■ The appellant next complains that the prosecutor, in bad faith, attempted to impeach the appellant by inferring that he had washed his hand before the test for gun powder residue was administered and by the manner in which the prosecutor questioned the appellant concerning his prior ownership of guns. It is well established that when a defendant takes the witness stand to testify in his own behalf, the prosecution has the right to cross-examine him with the same latitude as any other witness. *Rapp v. State,* 418 P.2d 357 (Okl.Cr.1966). Both of the subjects remarked on by the prosecutor had previously been brought up on direct examination and therefore no error occurred during the cross-examination.

■ Finally, the appellant asserts that it was error for the bailiff to enter the jury room during deliberations. While it is true that there is a presumption of prejudice resulting from communication between the bailiff and the jury after the deliberations begin, *Farrell v. State,* 512 P.2d 225 (Okl.Cr. 1973); the appellant is required to make more than a broad assertion that the confrontation occurred. No objection to the activity was made until after the verdict was read, although the appellant was aware of the incident as it occurred. Further, no effort was made during the hearing on the Motion for New Trial to call the bailiff or the jurors to testify. The record is void of any proof or evidence that an unauthorized communication with the jury took place. *Still v. State,* 484 P.2d 549 (Okl.Cr.1971). Finding no errors that would justify reversal or modification, the judgment and sentence appealed from is AFFIRMED.

BUSSEY and CORNISH, JJ., concur.