Jimmy L. PLUNKETT, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–84–53.

Court of Criminal Appeals of Oklahoma.

May 27, 1986.

Rehearing Denied June 27, 1986.

Patti Palmer, Deputy Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Terry J. Jenks, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

The appellant, Jimmy L. Plunkett, was convicted in the District Court of Garfield County, Case No. CRF–82–469, of Burglary in the Second Degree After Former Conviction of a Felony, Burglary in the First Degree After Former Conviction of a Felony, Murder in the First Degree, and Assault and Battery with a Dangerous Weap-

on After Former Conviction of a Felony. He received sentences of ten years', thirty-five years', life, and sixty-five years' imprisonment, respectively, and appeals.

The evidence shows that on October 29, 1982, in Enid, Oklahoma, between 7:45 to 8:20 p.m., the appellant committed a series of offenses, all within the same neighborhood. At some time shortly before 8:00 p.m., he entered the Stewart residence, which was unoccupied at the time, and took a pocket calculator and a set of keys. Soon thereafter he entered the Mitchell residence where he confronted their seventeen-year-old daughter in the basement. She followed him up the stairs and asked him not to go into the living room. She told him that she was going to get a robe or a pair of blue jeans, as she was only wearing a nightgown with an afghan wrapped around her. He told her she was not going anywhere and threatened if she did not calm down he would kill her. At that point she ran past him and escaped out the door. Both the Stewart and Mitchell residences were entered through unlocked doors. Shortly after 8:00 p.m., Johnny Just heard his storm door open, and then a rattling sound. His wife went to the door and saw a man whom she did not recognize. When Mr. Just went to the door, he saw no one at first, but when he stepped onto the porch, he observed the appellant in the shrubs. After asking him if he could help him and receiving no reply, he told the appellant to come onto the porch, which he did. The appellant upon being asked what he wanted, replied "Where's Paul?" Mr. Just told the appellant to leave. Both Just and Mitchell called the police. As a result of the description which was broadcast by the dispatcher, Officer David Pritchett subsequently stopped and arrested the appellant. He was then taken to the Mitchell residence for identification, where Ms. Mitchell positively identified him.

About 8:20 p.m. Captain Gary Hart of the Enid Police Department went to investigate a report of beatings at the Palecek residence where he found Mr. Palecek at the door of his residence with blood on his

face and clothes. He reported someone had broken in, and had beaten him and his wife. Captain Hart found Mrs. Palecek lying face down in a pool of blood in the den of the home. She died as a result of her wounds.

Because the appellant had bloodstains on him, he was questioned, but stated he could not remember anything after leaving a bar earlier in the evening. He had several scratches on his chest, underneath his neck, and on his right hand. He also admitted wearing a green jacket. That coat was found in the proximity of the offenses in a drainage ditch under a bridge on the morning of November 1, contained the initials J.P. and had bloodstains on it.

Mary Long, a criminalist with the O.S. B.I., testified that the bloodstains found on the appellant and the jacket were consistent with the blood of Mrs. Palecek, and were inconsistent with the blood of the appellant. She further testified that from the tests she performed, she determined that blood with the characteristics of Mrs. Palecek's would only be found in .48% of the population.

■■■ For his first assignment of error, the appellant alleges that his arrest was illegal and therefore the evidence obtained as a result of that arrest should have been suppressed. David Pritchett, the arresting officer, testified that he heard the broadcast of the description of a prowler and about the same time observed the appellant, who fit the description and who had just turned off of the street which was named in the broadcast. Officer Pritchett stopped the appellant, and observed that he appeared to be intoxicated, so the officer arrested him for public drunk. Even when there is not probable cause to make an arrest, a police officer may stop an individual when there is some objective manifestation that the person stopped had been or was about to be engaged in criminal activity. *Byrd v. State*, 657 P.2d 183 (Okl.Cr. 1983). Since the appellant fit the description of the prowler, and was in the vicinity of the house where the prowler was observed, Officer Pritchett was justified in making an investigatory stop. When the officer observed that the appellant appeared to be intoxicated, he was justified in making an arrest. *See* 22 O.S.Supp.1985, § 196(1). This assignment of error is without merit.

■■■ As his next assignment of error, the appellant argues that joining the four charges for trial was error. Appellant's motion to sever was overruled. He argues that although the crimes occurred in the same general neighborhood on the same evening, there are no other connecting factors and therefore the crimes cannot be considered part of the same transaction.

[J]oinder of separately punishable offenses is permitted if the separate offenses arise out of one criminal act or transaction, or are part of a series of criminal acts or transactions. *Accord Johnson v. State*, 650 P.2d 875, 876 (Okl. Cr.1982) (dicta).

*Glass v. State*, 701 P.2d 765, 768 (Okl.Cr. 1985). " 'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *United States v. Park*, 531 F.2d 754, 761 (5th Cir. 1976). In the case before us, all incidents occurred within one hour, all charges involved breaking into a residence, and all of the incidents occurred within a few blocks of each other. We therefore find that joinder of the charges was proper.

■■■ The appellant contends as his third assignment of error, that his in-court identification by Kimberly Mitchell should have been suppressed. He argues that her identification of him as the man who had assaulted her was tainted because it was based upon a one man showup on the night of the crime. The record reveals that after the police had arrested the appellant, they brought him to Ms. Mitchell's house for her to identify, which she did. Viewing a suspect alone in what is called a "one man showup," when this occurs near the time of the alleged criminal act, does not tend to bring about misidentification but rather tends under some circumstances to insure

accuracy. *Bates v. United States*, 405 F.2d 1104 (D.C.Cir.1968). The witness stood face to face with the appellant for several minutes during the commission of the offense, he fit the description she gave to the police, they picked him up, and he was identified by her within thirty minutes of the crime. We therefore find that the trial court properly overruled appellant's motion to suppress his in-court identification.

■ The appellant, as his next assignment of error, asserts that the trial court erred in failing to order a change of venue because of pretrial publicity. Granting a change of venue is discretionary with the trial court whose decision will not be grounds for reversal unless there has been a clear abuse of that discretion. Such abuse is shown where a defendant was prevented from receiving a fair trial by an impartial jury. *Andrews v. State*, 555 P.2d 1079 (Okl.Cr.1976). The appellant, however, used only four of his nine peremptory challenges and stated in the record that he believed that those remaining jurors would do their best to give him a fair and impartial trial. His two attorneys stated that they were in agreement with that decision. Therefore, we find this assignment of error to be meritless.

Next, the appellant complains that he should have been provided with funds for expert witnesses. During a motion hearing, defense counsel argued that a state-appointed expert was needed to attack the reliability of testing for enzymes in bloodstains, to attack the techniques used by the State's expert in making her determination, and to test the evidence independently. Counsel also argued that the failure to appoint an independent expert hindered the ability of the defense to cross-examine the State's expert. We have frequently held that the State is not required to fund the defense of an indigent beyond providing him with counsel. *Irvin v. State*, 617 P.2d 588 (Okl.Cr.1980). The Supreme Court of the United States held in *Ake v. Oklahoma*, ―― U.S. ――, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), that a State must pro-

vide an indigent defendant with access to "competent psychiatric assistance" to aid in the preparation of the defense if he makes a preliminary showing that his sanity will be a significant factor at trial. The rationale for this holding was that without such assistance "the risk of an inaccurate resolution of sanity issues is extremely high." Such a risk in other areas of scientific evidence is not necessarily present because the scientific expert is often able to explain to the jury how a conclusion was reached, the defense counsel can attack that conclusion, and the jury can then decide whether the conclusion had a sound basis.

■ In the case at bar, Mary Long, the expert who performed the blood enzymes test admitted that she was a technician and not a research scientist, she testified that the bloodstains found on the appellant's jacket and blue jeans were consistent with each other, inconsistent with the blood of the appellant, and consistent with the blood of the victim. She admitted that contamination could change the results of the tests she performed, and that none of the bloodstains she tested were very large. She testified that she did not have a degree in statistics, and that she arrived at the percentage of the population having the blood characteristics of the stains through figures that were given to her. The defense attorney thoroughly cross-examined Ms. Long and put on two experts of his own, Dr. George O'Dell, a professor of biochemistry at Oklahoma State University, and Dr. William Ward, an associate professor of statistics at Oklahoma State University. Therefore, we cannot say that the appellant was denied the "basic tools" of his defense. *See Standridge v. State*, 701 P.2d 761 (Okl.Cr.1985). This assignment of error is without merit.

As a sixth assignment of error, the appellant urges that the trial court erred in admitting the blood test evidence. He maintains that the State presented insufficient proof of the reliability of the multisystem blood enzyme test, which was used to classify the bloodstains found on the appellant's clothing. He also claims that

the test results should not have been admitted without a showing of compliance with quality control standards.

The testimony shows the multi-system blood enzyme test is a recently developed method of electrophoresis, a process for the separation of biologically important proteins through use of an electric current. After this separation, the components can be identified, which allows a more specific classification of the blood than the traditional A, B, O blood grouping.

The appellant alleges that the trial court erred by relying upon the opinion of a witness who was not an expert in the analysis of enzymes from bloodstains. The trial court found that the multi-system test was reliable, and based that finding upon the testimony of Dr. Ronald O. Gilcher, the director of the Oklahoma Blood Institute. The appellant asserts that Dr. Gilcher was not qualified to testify to the scientific reliability of the multi-system test because he does not analyze polymorphic enzymes in bloodstains, but instead employs the electrophoretic procedures with whole blood under uncontaminated conditions.

Whether the multi-system analysis of polymorphic enzymes by electrophoresis is sufficiently reliable to justify courts in approving the results of such a test as evidence in a criminal trial is a question of first impression in Oklahoma.

■■■■■ "Before scientific evidence is admissible, there must be proof that the reliability of the tests used has gained general acceptance and recognition in the concerned scientific community. See Henderson v. State, 94 Okl.Cr. 45, 230 P.2d 495 (1951) (lie detector tests)." Smith v. State, 656 P.2d 277, 281 (Okl.Cr.1982). Dr. Gilcher, who has an M.D. and is board certified in internal medicine and in hematology, testified that he was acquainted with the multi-system process. He explained how it worked, that it was used in both paternity testing and forensic medicine, and that it was generally accepted in the scientific community in which he belonged. He stated that the testing is "quite exact." Sufficient evidence was therefore presented for

the trial court to find that the multi-system test is reliable. In addition, we note that several of our sister states have held that this test as applied to bloodstains is admissible. Jenkins v. State, 156 Ga.App. 387, 274 S.E.2d 618 (1980), State v. Washington, 229 Kan. 47, 622 P.2d 986 (1981), State v. Rolls, 389 A.2d 824 (Maine 1978), Robinson v. State, 47 Md.App. 558, 425 A.2d 211 (1981), People v. Young, 106 Mich.App. 323, 308 N.W.2d 194 (1981). We find that the trial court did not abuse its discretion in admitting the evidence of the multi-system test.

■■■■■ Concerning appellant's complaint about the lack of evidence of quality control standards, Ms. Long testified in detail about the procedures involved in performing the test. We have no evidence that she failed to follow the procedures accepted by the scientific community. The appellant would have this Court require "rigorous quality control measures" and sets out a lengthy list of suggestions. Accuracy of test results and methods to maintain and assure accuracy are problems which should be addressed by the scientific community. If the test itself is not dependable, it is not admissible. See Mullins v. State, 443 P.2d 773 (Okl.Cr.1968). Likewise, a test which is undependable could not be shown to have attained the standing and scientific recognition to justify courts in approving the results. In the case at bar, the trial court heard the testimony of the State's expert, outside the presence of the jury, concerning the procedures which she performed while making the test. The trial court then allowed her to testify before the jury. We do not find any abuse of discretion.

■■■■■ The appellant next alleges that admitting the results of blood typing based on the A, B, O system was error. He asserts that the prosecution failed to establish the reliability of the A, B, O system, and that unconfirmed results were allowed in evidence when they should not have been. This Court has long allowed typing of bloodstains under the A, B, O system to

be used to show that the stains were the same as that of the victim. *See Hendricks v. State*, 296 P.2d 205 (Okl.Cr.1956), *cert. denied*, 352 U.S. 949, 77 S.Ct. 329, 1 L.Ed.2d 241 (1956). We have also allowed the admission of expert opinion regarding blood evidence. *Castleberry v. State*, 522 P.2d 257 (Okl.Cr.1974), *cert. denied*, 419 U.S. 1079, 95 S.Ct. 667, 42 L.Ed.2d 673 (1974), (overruled on another issue, *Fulton v. State*, 541 P.2d 871 (1985)). Consequently, it was not error for the trial court to allow this evidence to be admitted. Nor was it error for the trial court to allow Ms. Long's testimony that she found B antigens, but was unable to detect B antibodies. She carefully explained her testing procedures. The fact that she was unable to detect B antibodies clearly goes to the weight of the evidence, and not to its admissibility, as we have previously allowed admission of bloodstain evidence. *See Hendricks*, and *Castleberry*. This assignment of error is meritless.

■ As an eighth assignment of error, the appellant contends that the evidence of statistical probabilities used to show the percentage of the population having the blood characteristics of the bloodstains found on the appellant's clothing was error. He claims that the State failed to present an adequate foundation for its admission, and that its probative value is outweighed by its prejudicial effect. We disagree. Evidence was presented concerning its scientific reliability. Such evidence has also been accepted by our sister states. *See especially, State v. Washington*, 229 Kan. 47, 622 P.2d 986, 995 (1981) where the Kansas Supreme Court held that "population percentages on the possession of certain combinations of blood characteristics, based upon established facts, are admissible as relevant to identification." That court futher noted "Attacks on the validity of the underlying statistics go to the weight of such evidence, not its admissibility." *See also People v. Young*, 106 Mich. App. 323, 308 N.W.2d 194 (1981); *State v. Pearson*, 234 Kan. 906, 678 P.2d 605 (1984). Giving the factfinder a figure for the probability of certain blood characteristics, which probability is based upon scientifically reliable data, is clearly probative, the value of which outweighs the prejudice to the appellant.

■ The appellant next urges that the trial court erred in overruling his motion to quash the information which charged that he committed the offense of first degree murder with malice aforethought and/or while engaged in the commission of burglary in the first degree. Title 22 O.S.1981, § 404 states that "where the offense may be committed by the use of different means, the means may be alleged in the alternative in the same count." The offense of First Degree Murder can be committed through two means: with malice aforethought, or while engaged in the commission of a felony, 21 O.S.Supp.1985, § 701.7. In the case now before us, the murder could have been committed in either or both ways. We do not find any error in charging the appellant in the information under one count, and in the alternative.

■ The appellant also argues that the trial court should have instructed the jury that they had to unanimously agree on a single theory of guilt. We addressed this identical issue in *James v. State*, 637 P.2d 862 (Okl.Cr.1981). We held that failure of a jury to indicate the basis of their finding of guilt was not error. Here, there is a single crime charged, that is first degree murder. Whether or not it was committed with malice aforethought, or during the commission of a felony goes to the factual basis of the crime. The jury verdict was unanimous that the appellant committed the crime. Such a verdict satisfies due process. This assignment of error is meritless.

■ As a tenth assignment of error, the appellant asserts that insufficient evidence was presented to support his conviction for first degree burglary because the evidence that he intended to assault the victim when he entered the residence is lacking. The testimony of Kimberly Mitchell is that she was in the basement of her

home when she looked up and saw the appellant who asked where everybody was, walked into another room and started up the stairs. She got up to ask him what he was doing, he told her to "come here" and she followed him up the stairs. She asked him not to go into the living room, and said she was going to get a robe or a pair of jeans because she was only wearing a nightgown with an afghan wrapped around her. He replied, "No, you are not going anywhere," and grabbed at the afghan. He threatened, "You better calm down or I will kill you. You better shut up or I will kill you." The victim then ran past the appellant and out the door. As she did this, she felt him grab her nightgown, but she escaped to a neighbor's house. Determination of intent is a question for the trier of fact and may be proved by direct or circumstantial evidence. *Parrott v. State*, 522 P.2d 628 (Okl.Cr.1974). The weight of all the evidence, direct or circumstantial, is for the jury, whose verdict we will not disturb when there is evidence, albeit circumstantial, to support that verdict. *Fields v. State*, 666 P.2d 1301 (Okl.Cr. 1983). As the actions of the appellant present circumstantial evidence of the intent to commit an assault when he entered the residence, we find that the State presented sufficient evidence to support the verdict.

The appellant next complains of the failure of the trial court to give two cautionary instructions, one on his identification by Kimberly Mitchell, and the other concerning the use of statistics to give the percentage of the population having the blood characteristics found in the bloodstains on the appellant's clothing. In the first instance, the defense counsel did not request a cautionary instruction. Where the accused fails to request an instruction to the jury, and no objection is made to the instructions given, he has failed to preserve the alleged error and waives it. *Smith v. State*, 568 P.2d 639 (Okl.Cr.1977). Even had such a request been made, the instruction would have been improper as there is no serious question concerning the reliability of the identification. In spite of the

appellant's assertions that Ms. Mitchell was not in a position to view the intruder clearly, and that no description of the intruder was first made to the police officers, the evidence is clearly otherwise. Such an assertion is utterly meritless.

Concerning the requested instruction on the use of statistics, we find there was no need for a limiting instruction. The evidence given concerning this matter was clear that the bloodstains on the appellant's clothing could not positively be proven to be that of Mrs. Palecek, but were consistent with her blood, and that only .48% of the population would have blood with the same characteristics as Mrs. Palecek. The trial court gave an instruction regarding expert testimony (Tr. 248), and also an instruction cautioning the jury to weigh the credibility of all witnesses. We do not find error in the trial court's refusal to give such an instruction.

In his twelfth assignment of error, the appellant complains of improper prosecutorial remarks. However, as defense counsel did not object to any of these allegedly improper remarks, they were not preserved for appeal. *See Burrows v. State*, 640 P.2d 533 (Okl.Cr.1982), *cert. denied*, 460 U.S. 1011, 103 S.Ct. 1250, 75 L.Ed.2d 480 (1983). Furthermore, we are unable to conclude that the remarks warrant reversal or modification as they do not adversely affect the fundamental fairness of the proceeding. *See Coleman v. State*, 668 P.2d 1126 (Okl.Cr.1983), *cert. denied*, 464 U.S. 1073, 104 S.Ct. 986, 79 L.Ed.2d 222 (1984). This assignment of error is meritless.

The appellant next urges that the trial court abused its discretion in not permitting Mary Long's testimony to be reread to the jury. The decision to reread testimony is discretionary with the trial court. *Glaze v. State*, 565 P.2d 710 (Okl. Cr.1977). We find that the trial court did not abuse its discretion in refusing the jury's request to reread the testimony. *See Roberts v. State*, 620 P.2d 425 (Okl.Cr. 1980).

Finally, the appellant complains that the trial judge's decision to run the sentences consecutively was an abuse of discretion. We disagree. Where a defendant is convicted of separate offenses, imposing consecutive sentences is not an abuse of discretion. *Bookman v. State*, 661 P.2d 909 (Okl.Cr.1983). He also complains that the sentences imposed were excessive. The excessiveness of a sentence is to be judged from all the facts and circumstances surrounding a case. This Court does not have the power to modify a sentence unless it is so excessive that it shocks the conscience of the court. *Young v. State*, 701 P.2d 415 (Okl.Cr.1985). Under this standard, we do not find any cause to modify. This assignment of error is without merit.

Finding no error warranting modification or reversal, the judgments and sentences are AFFIRMED.

BRETT, J., concurs.

PARKS, P.J., concurs in results.