Daniel Tamez CAVAZOS, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–85–717.

Court of Criminal Appeals of Oklahoma.

Aug. 31, 1989.

Rehearing Denied Oct. 16, 1989.

Jim Rowan, Asst. Public Defender, Oklahoma County Public Defenders Office, Oklahoma City, for appellant.

Robert H. Henry, Atty. Gen. of Oklahoma, William H. Luker, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

LUMPKIN, Judge:

The Appellant, Daniel Tamez Cavazos was tried by a jury and convicted of Murder in the First Degree in violation of 21 O.S.1981, § 701.7 in Case No. CRF–82–5707 in the District Court of Oklahoma County before the Honorable Jack R. Parr, District Judge. The jury set punishment at life imprisonment. Judgment and sentence was imposed in accordance with the jury's verdict. We affirm.

On November 4, 1982, Officer James Nutt from the Oklahoma City Police Department was called to investigate a homicide in Oklahoma County. When he arrived at the scene he discovered the partially nude body of Jennie May Harness on the floor in a small cinderblock building. It was determined that the cause of her death was ligature strangulation. Pursuant to his investigation the officer found a package of cigarettes on the floor near the head of the victim. This package of cigarettes was dusted for fingerprints and it was later determined that the fingerprint found on it was made by the Appellant. Officer Nutt also had a forensic chemist spray the body of the victim with a chemical mixture designed to reveal small amounts of blood that are not otherwise visible to the naked eye. This procedure revealed that a fingerprint had been made in blood on the victim's back. This fingerprint was also identified as having been made by the Appellant.

Appellant alleges in his first proposition that the trial court erred in failing to sustain his demur to the evidence at the close of the State's case. He accurately notes that the most significant evidence presented against him at trial was testimony that two of his fingerprints were found at the scene of the crime: one on the package of cigarettes near the decedent's head, and the other on the decedent's back. Appellant argues that the fingerprints could have been made prior to or after the crime was committed. He claims that there was no evidence that they were made during the commission of the crime. Appellant cites *Humphrey v. State*, 485 P.2d 782, 783 (Okl.Cr.1971), for the proposition that "where there is evidence showing that the fingerprints of accused were found in the place where the crime was committed, under such circumstances that they could have been impressed only at the time of the crime, it may be sufficient to sustain a conviction."

■ Where there is competent evidence that reasonably supports the crime charged, a demurrer to the evidence should not be sustained. *Rosteck v. State*, 749 P.2d 556, 558 (Okl.Cr.1988). The decedent was found partially nude with cuts, abrasions and scrapes on her body. [Tr. 57, 58] The fact that the fingerprint was made in blood on the decedent's unclothed back is competent evidence that the fingerprint could only have been impressed at the time that the crime was committed. Therefore, upon finding that there was competent evidence that reasonably supported the crime charged we hold that the demur was properly overruled.

■ In his second proposition Appellant alleges that the trial court erred by admitting evidence of a fingerprint collected by unreliable scientific means. Before addressing this allegation of error we first note that no objection to the scientific method of gathering the fingerprint was made at trial. Therefore, this court will review this proposition only for fundamental error. *Parks v. State*, 651 P.2d 686, 692 (Okl.Cr.1982).

■ In order for scientific evidence to be admissible, there must be evidence that the scientific tests used to gather such evidence are reliable and have been accepted and recognized by the scientific community. *Smith v. State*, 656 P.2d 277, 281 (Okl.Cr.1982). However, scientific devices designed for obtaining results to prove the guilt or innocence of a defendant require various degrees of evidence supporting their scientific reliability. *Harris v. State*, 383 P.2d 39, 43 (Okl.Cr.1963).

In the present case, the forensic chemist testified that in order to detect latent fingerprints on the victim's body, she sprayed the body with a chemical combination developed to reveal latent fingerprints made in blood. She testified that although she had used this procedure before on inorganic surfaces, this was the first time that she had used it on a human body. [Tr. 38, 41] It was not even clear from the transcript whether or not the chemical she used was utilized outside of her police department.

■ Tests used to gain scientific evidence are required to be accepted and recognized in the scientific community in order to assure accuracy and reliability of test results. *Plunkett v. State*, 719 P.2d 834, 840 (Okl.Cr.1986). However, accuracy and reliability of test results are more important with some scientific tests than with others. This Court has reversed cases where evidence was gained through the use of scientific methods such as hypnosis or polygraph tests where it was found that the test results were unreliable because they could be determined by outside influences. *See Harmon v. State*, 700 P.2d 212 (Okl.Cr.1985); *Fulton v. State*, 541 P.2d 871 (Okl.Cr.1975). This case can be distinguished because the chemical spray used to reveal the latent fingerprints merely enhanced evidence already on the victim's body. The result that it produced could not have been altered by any outside influences.

■ Therefore, the fact that the chemical process used by the forensic chemist was not proven to be accurate and accepted by the scientific community is not dispositive. It is enough that in this instance it did enhance evidence which could accurately be connected to the Appellant through the use of an accepted test, that of fingerprint analysis. The procedure utilized was different from the commonly accepted method of dusting for fingerprints only in the substance utilized to reveal the existing fingerprint. We find that evidence of the fingerprint was properly admitted and therefore decline to reverse on this assignment of error.

■ In his third proposition Appellant contends that there was insufficient evidence to support a conviction of murder in the first degree because there was no proof of malice aforethought. Where, as in this case, all of the evidence establishing Appellant's guilt is circumstantial, a conviction will only be sustained if the evidence presented excludes every reasonable hypothesis except that of guilt. *Riley v. State*, 760 P.2d 198, 199 (Okl.Cr.1988). However, circumstantial evidence need not exclude every conceivable hypothesis or negate any possibility other than guilt. *D.R.R. v. State*, 734 P.2d 310, 311 (Okl.Cr. 1987). In addition, malice aforethought may be proved by circumstantial evidence and it is within the province of the jury to decide its existence. *Barr v. State*, 763 P.2d 1184, 1186 (Okl.Cr.1988).

■ The fact that the defendant's fingerprint was found in blood on the victim's back is circumstantial evidence sufficient to exclude every reasonable hypothesis except that of guilt. In addition, malice aforethought could reasonably have been inferred from the manner in which the victim was killed since strangulation logically takes time and specific effort to accomplish. Therefore, we hold that a reasonable jury could have found malice aforethought beyond a reasonable doubt.

Accordingly, because we have found no error requiring reversal, the judgment and sentence is AFFIRMED.

PARKS, P.J., specially concurs.

LANE, V.P.J. and BRETT, J., concur.

PARKS, Presiding Judge, specially concurring:

I concur in the result reached by the majority, with regard to the use of ortho-toldine, a chemical mixture, to enhance a fingerprint impressed in blood on the decedent's back; however, I would note that the majority fails to apply the applicable provisions of the Oklahoma Evidence Code, 12 O.S.1981, §§ 2702, 2703. Further, absent a timely specific objection at trial, this issue is reviewable on appeal only for "plain error" affecting a substantial right of appellant. *See* 12 O.S.1981, § 1204(A)(1) & (D). Appellant has not demonstrated plain error on this record. Accordingly, I concur in the affirmance of his conviction.